20 A.3d 468

**WALNUT STREET ASSOCIATES, INC., Appellant**

**v.**

**BROKERAGE CONCEPTS, INC. and Kimberly Macrone, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 2010.

Decided May 13, 2011.

372

Steven E. Angstreich, Amy Robin Krouk Brandt, Weir & Partners, L.L.P., Philadelphia, for Walnut Street Associates, Inc.

A. Richard Feldman, Bazelon Less & Feldman, P.C., Philadelphia, for Brokerage Concepts, Inc.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## *OPINION*

Chief Justice CASTILLE.

We consider whether Restatement (Second) of Torts § 772(a) applies in Pennsylvania to preclude an action for tortious interference with contractual relations where it is undisputed that the defendant's interfering statements were truthful.[1] We hold that Section 772(a) is applicable, and we affirm the decision of the Superior Court.

---

1. Section 772 provides:
 One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person
 (a) truthful information, or
 (b) honest advice within the scope of a request for the advice.
 RESTATEMENT (SECOND) OF TORTS § 772 (1979).

Appellant, Walnut Street Associates ("WSA"), provides insurance brokerage services and assists employers in obtaining health insurance for their employees. Since the 1980s, WSA was the broker of record for health insurance provided to employees of Procacci Brothers Sales Corporation ("Procacci"). Appellee, Brokerage Concepts, Inc. ("BCI"), is a third party administrator of employee benefit plans. In 1994, at the recommendation of WSA, Procacci retained BCI as administrator of its insurance plans, and BCI paid commissions to WSA based on premiums paid by Procacci.

In 2005, Procacci requested that BCI lower costs, but BCI would not meet Procacci's proposal. Procacci then notified BCI that it would be moving its business to another third-party administrator. Shortly thereafter, BCI's employee Kimberly Macrone wrote a letter to Procacci asking it to reconsider its decision, and in the process advising Procacci of the amount of compensation WSA had been receiving as broker of record. The amount was apparently higher than Procacci believed WSA had been earning, but there is no dispute that Macrone's statements about WSA's compensation were true. As a result of Macrone's letter, Procacci terminated its longstanding contractual relationship with WSA.

WSA then filed this action against BCI and Macrone.[2] The complaint included four counts, three of which sought recovery of unpaid commissions, and were dismissed on summary judgment after BCI paid the disputed amounts. In the fourth count, WSA alleged that BCI had tortiously interfered with the WSA/Procacci contractual relationship by disclosing the amount of WSA's compensation. In its answer and new matter, BCI alleged, *inter alia,* that it could not be held liable for tortious interference because the information it provided to Procacci was truthful, or otherwise justified and privileged, and not confidential. The parties went to trial on the tortious interference claim. At the charging conference, BCI requested a jury instruction on truthfulness as a defense pursuant to Section 772(a), but the court denied it. Instead, the court's

2. Kimberly Macrone was dismissed on voluntary nonsuit after trial, and is not a party to this appeal.

instruction on tortious interference tracked two other Restatement provisions, Restatement (Second) of Torts §§ 766 and 767.[3] The jury, so charged, specifically found that BCI had intentionally and improperly interfered with the WSA/Procacci contract, caused Procacci to terminate that contract, and awarded WSA $330,000 in damages. After its post-trial motion was denied, BCI filed an appeal to Superior Court.

The Superior Court reversed, holding that Macrone's truthful statements to Procacci regarding WSA's compensation could not support a claim for tortious interference with contractual relations. *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94 (Pa.Super.2009). The court relied on Restatement Section 772(a), which, as noted above, provides that one who intentionally causes a third person not to per-

**3.** N.T. 6/29/07, 13–14. The court instructed the jury as follows:
[H]ere are the things that plaintiff has to prove to you. One, the existence of a contractual or prospective contractual relation between the complainant and a third party ... Two[:] Purposeful action on the part of the defendant specifically intended to harm the existing relation or to prevent a prospective relation from occurring. Three, the absence of privilege or justification on the part of the defendant. And four, actual legal damages resulting from the defendant's conduct. Here are some of the factors that you should consider in determining whether interference was improper. Consideration should be given to the nature of the defendant's conduct; the defendant's motive; the interests of the defendant; the interests of all the parties that the conduct supposedly interfered with; the interests sought to be advanced by the defendant; the social interests in protecting the freedom of action of the defendant; and the contractual interests of the plaintiff; the proximity or remoteness of the defendant's conduct to the interference; and the relationship between and among all the parties. A defendant's conduct is privileged when it acts as a competitor seeking to advance its own competitive interests if it does not employ improper or wrongful means. A defendant's conduct is privileged when it employs proper means to protect or advance its own business interests, even if the conduct invades another's interest in freedom from interference with its own contractual relations.
*Id.* at 14–16. *See* RESTATEMENT (SECOND) OF TORTS §§ 766 (intentional interference with contract by third person) and 767 (factors in determining whether interference is improper). The court denied the requested instruction on Section 772(a), but BCI raised truthfulness as a defense in its Answer and New Matter, its motion for directed verdict, its post-trial motion for judgment n.o.v. or a new trial, its Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and its appeal to the Superior Court.

form a contract with another does not interfere improperly with the other's contractual relation by giving the third person truthful information. Because Macrone's statements to Procacci about WSA's compensation were true, the court held as a matter of law that BCI's interference with the WSA/Procacci contract was not actionable as tortious interference, and remanded for entry of judgment notwithstanding the verdict in favor of BCI. *Id.* at 102. In doing so, the Superior Court predicted that this Court would adopt and apply Section 772(a) under these circumstances, and noted that "the courts of sister jurisdictions have nearly universally adopted" it. *Id.* at 101 & n. 7 (collecting cases).

We granted allocatur in part, rephrasing the issue as follows:

Did the Superior Court err in adopting and applying Restatement (Second) of Torts § 772(a), and holding that truthful statements could not form the basis of a claim for tortious interference with contractual relations?

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.,* 605 Pa. 407, 990 A.2d 724 (2010).

 Appellant WSA argues that the Superior Court's decision adopting and applying Section 772(a) was erroneous. WSA insists that the trial court properly held that truth is not a defense to a claim for tortious interference with contractual relations. According to WSA, the court properly instructed the jury to consider the following factors in evaluating Macrone/BCI's conduct: a) the nature of the actor's conduct; b) the actor's motive; c) the interest of the other with which the actor's conduct interferes; d) the interests sought to be advanced by the actor; e) the social interest in protecting the freedom of action of the actor and the contractual interests of the other; and f) the relations between the parties. *See* RESTATEMENT (SECOND) OF TORTS § 767 (listing factors relevant to determining whether interference is improper); *Adler, Barish, Daniels, Levin & Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978) ("*Adler Barish* ") (considering Section 767 factors in analyzing whether defendants' conduct was actionable). Applying these factors alone, WSA argues, the jury

correctly determined that BCI's conduct was improper and unjustified, and caused the termination of the Procacci account, to WSA's financial detriment.

Moreover, argues WSA, only this Court, and not the Superior Court, may adopt a section of the Restatement not previously applied in Pennsylvania. According to WSA, the Superior Court should have relied on this Court's decision in *Adler Barish*. In that case, certain associates of the Adler Barish law firm left that firm and opened a competing firm; the former associates sent letters to Adler Barish clients informing them that they could now choose to be represented by the new firm instead of Adler Barish, and included a form that the clients could complete and return to Adler Barish (in an enclosed, addressed and stamped envelope) severing their relationship with that firm. WSA argues that these client letters were "true," and yet this Court nonetheless held that the communications were actionable. From these factual circumstances, WSA argues that *Adler Barish* stands for the proposition that truth is not a defense to its tortious interference claim against BCI in this case.

WSA further argues that the Superior Court erroneously concluded that this Court would adopt Restatement (Second) of Torts § 772(a), simply because we had relied upon "what is now" Section 772(b) to support a different proposition in *Menefee v. Columbia Broadcasting System Inc.*, 458 Pa. 46, 329 A.2d 216 (1974) (action against employer and its representatives for tortious interference with employment contract was properly dismissed; representatives were privileged to advise employer on handling its employees and terminating plaintiff's contract). Instead, WSA relies on a different Superior Court panel's earlier statement that this Court in *Adler Barish* recognized Sections 766 and 767 of the Restatement as "accurate embodiments of the law of this Commonwealth." *See Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611, 622 n. 11 (1980), *abrogation on other grounds recognized in Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022 (1991). WSA acknowledges, but rejects as *dicta*, a footnote in *Yaindl* declaring that if the jury in that case had

concluded that the defendant imparted truthful information, the interference with contract would not be improper. *Id.* at 622 n. 12 (citing RESTATEMENT (SECOND) OF TORTS § 772).

WSA also relies on *Collincini v. Honeywell, Inc.*, 411 Pa.Super. 166, 601 A.2d 292 (1991), *appeal denied,* 530 Pa. 651, 608 A.2d 27 (1992), arguing that the Superior Court panel there held that truth was not a defense to a tortious interference action.[4] *See also Skiff Re Business, Inc. v. Buckingham Ridgeview, LP,* 991 A.2d 956 (Pa.Super.2010) (applying Section 767 to determine propriety of real estate broker's statements). In addition, WSA cites several federal cases which focus on Section 767 instead of Section 772 and, according to WSA, hold that truth is not a defense to a tortious interference claim under Pennsylvania law. *See Kachmar v. SunGard Data Systems, Inc.,* 109 F.3d 173, 185 (3d Cir.1997) (remanding for district court to consider Section 767 factors rather than focusing solely on truthfulness under Section 772; "Pennsylvania Supreme Court has never explicitly adopted section 772"); *Shulman v. Chromatex, Inc.,* 2009 WL 5111773 (M.D.Pa.2009) (citing *Adler Barish* and Section 767 in analyzing sufficiency of tortious interference claim); *Long v. Valley Forge Military Academy Foundation,* 2008 WL 5157508 (E.D.Pa.2008) (despite defendant's allegation that information imparted was truthful, factual analysis of Section 767 factors is necessary to determine whether alleged interference was improper or justified).

Finally, WSA reiterates its view that only this Court has the authority to adopt Section 772(a), and that the Superior Court erred in applying a new rule retroactively here. According to WSA, this retroactive change in the law has led to an inequitable result by reversing a jury verdict, after years of litigation which proceeded on the basis that Section 767—not Section 772—was the law of the Commonwealth. WSA claims that because it was aware that at least portions of the BCI letter were true, WSA "would not have even brought its claim for tortious interference if [Section] 772(a) were the applicable

---

4. As discussed *infra* at footnote 12, the *Collincini* court's statement to this effect was *dicta.*

law," and thus "chang[ing] the playing field" now is a great hardship to WSA. Appellant's Brief at 23.

Appellee BCI argues that the Superior Court properly applied Section 772(a) here. BCI asserts that this Court has repeatedly looked to the Restatements of Torts in shaping the law of tortious interference, citing, *inter alia, Adler Barish, supra.* BCI accurately points out that at the time *Adler Barish* was decided, the Second Restatement of Torts had not yet been published and the Draft that existed did not include subsection (a) regarding truthful statements.[5] Therefore, BCI argues, WSA's contention that the *Adler Barish* Court rejected Section 772(a) is unavailing. In any event, the truthful statement involved in *Adler Barish*—that the former associates had formed a new firm—was acknowledged by this Court to merit constitutional protection. 393 A.2d at 1179. Liability in that case was instead premised on the associates' *conduct* of expressly soliciting Adler Barish clients who had currently active cases, pressuring them to reject Adler Barish's representation, and providing them with paperwork to facilitate that result. *Id.* at 1180.

BCI also relies on this Court's decision in *Menefee, supra,* noting that the Court there endorsed the "honest advice privilege" in Section 772 of the First Restatement, now Section 772(b) of the Second Restatement, and that it "is only a small step" to approve Section 772(a); both current subsections of Section 772 "protect speech that is truthful, regardless of the speaker's intent." Appellee's Brief at 14. BCI draws a parallel between the truth defense in defamation claims, *e.g., Connor v. Archdiocese of Philadelphia,* 601 Pa. 577, 975 A.2d 1084, 1104 (2009) (citing 42 Pa.C.S. § 8343(b) regarding truth as a defense), and the truth defense implicated in this tortious

---

5. Tentative Draft No. 23 of Section 772 provided only that "honest advice within the scope of a request for advice from the third person does not interfere improperly with the other's contractual relation." We note, however, that the Draft did include a "comment c" which, like current comment b, stated: "There is of course no liability for interference with a contract ... on the part of one who merely gives truthful information to another. The interference in this instance is clearly not improper...." Tentative Draft No. 23 of Restatement of Torts (Second) § 772 (1977).

interference case. *See also* PROSSER AND KEETON ON THE LAW OF TORTS § 129 at p. 989 (5th ed.1984) ("it is probably safe to assume that occasions privileged under the law of defamation are also occasions in which interference with contract by legal means would be considered justified").

BCI also argues that "the majority of courts in other states have concluded that truthful statements do not give rise to a tortious interference claim." Appellee's Brief at 18. *See also Walnut St.*, 982 A.2d at 101 n. 7. BCI further asserts that adopting Section 772(a) has the added benefit of relieving the courts from deciding otherwise-implicated constitutional issues. In this regard, BCI claims that if it can be held liable in tort for its truthful commercial speech, this Court ultimately would have to determine whether such a rule violates the United States or Pennsylvania Constitutions. BCI argues that in a case like this, where there is no evidence that the amount of WSA's compensation was somehow private or confidential, and where no other state interest—such as violation of an ethical rule or industry custom—could justify regulation, the First Amendment protects truthful speech against a claim for damages for tortious interference.[6] Indeed, BCI contends, strong public policies weigh heavily in favor of disclosure of health care costs, including the amount of compensation paid to an insurance broker. *See, e.g.*, 29 U.S.C. §§ 1023(c)(3); 1106(a)(1)(D); 1108(b)(2) (under ERISA, employers have right and obligation to know and monitor amount of compensation paid to insurance broker providing services to its health plan). Similarly, BCI argues, under Pennsylvania common law WSA had a fiduciary duty to give relevant information concerning the subject of its agency—including its compensation—to its principal Procacci.

BCI further asserts that the Superior Court properly predicted that this Court would adopt Section 772(a) when given the opportunity, and that the Superior Court does not lack the

**6.** We note that the contingent constitutional question so identified by BCI is not before this Court in this appeal. Nevertheless, the point, even if not preserved as a separate basis for relief, obviously may be relevant to our assessment of the discrete issue we have accepted.

authority to adopt a Restatement provision involving an issue not previously resolved by this Court. BCI rejects WSA's claim that the Superior Court retroactively applied a new rule of law, because the rule had been applied earlier in *Yaindl* and *Geyer v. Steinbronn*, 351 Pa.Super. 536, 506 A.2d 901 (1986), but in any event, application in this case was not error.

Finally, BCI argues that even if this Court declines to adopt Section 772(a), we should nonetheless affirm. According to BCI, this case involves the termination of an at-will contract as the result of a letter accurately describing WSA's compensation, which information was not entitled to confidentiality or privacy, and where the disclosure did not violate industry customs or ethical standards. Moreover, BCI claims, the social utility of the disclosure is "obvious." Even under comment f to Section 767, an "interference" designed to further one's own economic interests "will normally prevail over a similar interest of the other if the actor does not use wrongful means."[7] BCI argues that WSA's loss in this case is not the kind the law should protect, as it resulted from the termination of a contract that did not involve a meeting of minds because Procacci believed it was paying a different amount to WSA. In response to these final arguments by BCI, WSA simply states that they are outside the scope of the question before us, and if we do not approve of the Superior Court's adoption of Section 772(a), we should reverse.

■ The issue posed is a question of law. Because the relevant facts are not in dispute, our review of the lower courts' conclusions of law is plenary and *de novo*. *See Vicari v. Spiegel*, 605 Pa. 381, 989 A.2d 1277, 1282 (2010) (when reviewing a question of law this Court's standard of review is *de novo* and the scope of review is plenary). We consider the parties' arguments within the context of our law on tortious interference.

In *Adler Barish, supra,* this Court acknowledged a well-established cause of action for intentional, improper interfer-

---

7. In reply, WSA reiterates that the jury, charged on the law of tortious interference as set forth in Restatement Sections 766 and 767, still found in its favor.

ence with existing contractual relations. 393 A.2d at 1181–82 (citing RESTATEMENT (FIRST) OF TORTS § 766 and *Birl v. Philadelphia Elec. Co.*, 402 Pa. 297, 167 A.2d 472 (1960)). *See also Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979) (considering First Restatement § 766 in analyzing claim of tortious interference with prospective contractual relations); *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971) (same). " '[T]he common law has recognized an action in tort for an intentional, unprivileged interference with contractual relations. It is generally recognized that one has the right to pursue his business relations or employment free from interference on the part of other persons except where such interference is justified or constitutes an exercise of an absolute right.' " *Adler Barish*, 393 A.2d at 1182 (quoting from *Birl*, 167 A.2d at 474). The Court explained that "[s]ince *Birl*, we have repeatedly looked to the Restatement as authority for the elements of a cause of action for intentional interference with existing contract relations." *Id.* at 1182 n. 13. The Court further recognized that it "constantly seeks to harmonize common law rules, principles, and doctrines with modern perceptions of societal needs and responsibilities," and since the American Law Institute, which publishes the Restatements, makes a "continuing effort to provide the judicial system orderly and accurate restatements of the common law," it is "appropriate to analyze this case in light of the approach fashioned by Restatement (Second)." *Id.* at 1183.

The *Adler Barish* Court proceeded to quote then-Tentative Draft No. 23 of the Restatement (Second) of Torts § 766, which provided that "[o]ne who intentionally and improperly interferes with the performance of a contract" is subject to liability for pecuniary loss resulting from a failure to perform the contract.[8] The Court went on to consider whether the former Adler Barish associates' intentional interference with

8. In its current form, Section 766 still provides: "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." RESTATEMENT (SECOND) OF TORTS § 766.

client contracts was privileged and justified, or whether it was "improper." *Id.* at 1183.

Ours is a free society where citizens may freely interact and exchange information. Tortious interference, as a basis for civil liability, does not operate to burden such interactions, but rather, to attach a reasonable consequence when the defendant's intentional interference was "improper." [9] The term is addressed in several sections of the Restatement (Second) of Torts. In *Adler Barish,* this Court looked to Section 767:

In determining whether an actor's conduct in intentionally interfering with an existing contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

9. It is notable that, historically, the term "malicious" was used to define the kind of intentional interference with contractual relations that was actionable. *See* RESTATEMENT (SECOND) OF TORTS Div. 9, Ch. 37 Introductory Note (1979) (citing *Lumley v. Gye* (1853) 2 E. & Bl. 216, 118 Eng.Rep. 749). This Court has recognized that "what is meant is not malice in the sense of ill will but merely purposeful interference without justification." *Adler Barish, supra* at 1182 (quoting from *Birl, supra* at 474). The Restatement commentary indicates that its drafters settled on the term "improper" as a "single word that will indicate for this tort the balancing process expressed by the two terms 'culpable and not justified.' " *Introductory Note, supra.* "Section 767 specifies and analyzes the factors to be taken into consideration in determining whether the interference is improper, and must therefore be read and applied to each of the earlier sections.... Sections 768–773 state specific applications of the factors set out in § 767 to certain types of factual patterns." *Id.*

393 A.2d at 1184. After analyzing the facts of that case under Section 767, the Court concluded that the former associates' contact with clients of their former employer—clients who had open, active cases being handled by that firm—"unduly suggested a course of action" for them, "unfairly prejudiced" Adler Barish, and thus was improper. *Id.* at 1185. The former associates had even used the potential fees from these Adler Barish clients' active cases as collateral for obtaining a line of bank credit for their new firm. *Id.* at 1177. We noted that "[n]o public interest is served in condoning use of confidential information which has these effects." *Id.* at 1185. As BCI accurately notes, the *Adler Barish* Court did not consider Section 772(a), which had not yet been published, nor the specific proposition for which it stands, although the proposition was contained in commentary to the Tentative Draft. *See* footnote 5, *supra.*[10]

Together with Sections 766 and 767, Section 772 is now part of a larger scheme of Second Restatement provisions regarding tortious interference with contractual relations, and further defines the core concept of "improper" interference.[11]

10. The *Adler Barish* Court did acknowledge that under *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), "states are barred from imposing blanket prohibitions against truthful advertising of 'routine' legal services." 393 A.2d at 1179 (citing *Bates,* 433 U.S. at 365, 97 S.Ct. 2691). But, this Court's discussion of truthful statements in *Adler Barish* focused on their protection as part of a "free flow of commercial information" under the First and Fourteenth Amendments, as described in *Bates* and later circumscribed in *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) (not all commercial speech by attorneys is protected; disciplinary rules may sanction improper client solicitation). The *Adler Barish* Court concluded that the former associates' conduct in that case did not merit protection because it "frustrate[d], rather than advance[d], Adler Barish clients' 'informed and reliable decisionmaking.'" 393 A.2d at 1181.

11. The Second Restatement provides a detailed framework for analyzing claims of tortious interference with contractual relations, including provisions describing "improper" conduct. *See generally* RESTATEMENT (SECOND) OF TORTS §§ 766 (intentional interference with performance of contract by third person); 766A (intentional interference with another's performance of his own contract); 766B (prospective contractual relations); 766C (negligent interference); 767 (factors in determining whether interference is improper); 768 (competition); 769 (actor having financial interest in business of person induced); 770 (actor respon-

Indeed, commentary appended to Section 767 provides that "Sections 769–773 deal with other special situations in which application of the factors enumerated in this Section [767] have produced more clearly identifiable decisional patterns. The specific applications in these Sections [769–773] therefore **supplant the generalization** expressed in this Section." RE-STATEMENT (SECOND) OF TORTS § 767, cmt. a (emphasis added). This is not an extraordinary proposition; this is the manner in which the law often progresses. As general principles are tested in practice, more specific and accurate paradigms arise. Indeed, the commentary indicates that in situations where a Section 772(a) truthfulness defense is raised against claims of tortious interference, analysis of the general factors enumerated in Section 767 is not necessary. The commentary further supports this conclusion by recognizing that there are some situations where "the process of weighing the conflicting factors set forth in this Section has already been performed by the courts.... When this has been accomplished and the scope of the more or less crystallized rule or privilege has been indicated by the decisions, the responsibility in the particular case is simply to apply it to the facts involved; and there is no need to go through the balancing process afresh. Some of the situations in which this development has occurred are stated in §§ 769–773." *See* RESTATEMENT (SECOND) OF TORTS § 767, cmt. j (determination of whether actor's conduct is improper or not).

We do not view Section 772(a) as intending to alter the traditional understanding of the tort; as the Second Restatement makes clear, the elaborations are a product of experience and refinement. It is true that this Court has not yet expressly "adopted" Restatement (Second) of Torts § 772(a); nor have we rejected it.[12] However, the Court did rely on the

sible for welfare of another); 771 (inducement to influence another's business policy); 772 (advice as proper or improper interference); 773 (asserting a bona fide claim); 774 (agreement illegal or contrary to public policy); 774A (damages).

12. In its brief, WSA makes much of the Superior Court panel's statement in *Collincini, supra,* that truth "is *not* a defense to intentional interference with contractual relations." 601 A.2d at 296 (emphasis in

precursor to Section 772(b) to shield defendants from a tortious interference claim where they gave advice to their employer about another employee. *See Menefee, supra* (citing former Section 772, now 772(b)). And, even earlier, this Court recognized the countervailing proposition that a "groundless" allegation or a "misrepresentation" would indeed support an action for interference with contractual relations. *See, e.g., Caskie v. Philadelphia Rapid Transit Co.*, 321 Pa. 157, 184 A. 17 (1936) (defendant's fraudulent misrepresentations supported plaintiff's right of action arising out of interference with contract); *Vanarsdale v. Laverty*, 69 Pa. 103 (1871) (defendants, "without cause," sought to have schoolteacher fired, and judgment against them was upheld; "[a] groundless petition instigated only by malice cannot surely be the right of any citizen where it actually results in harm to the object of its malicious purpose."). Our focus on fraudulent and groundless actions suggests a recognition of the relevance of truth in assessing the proper application of the tort.

■ The Superior Court, which by design hears and decides many issues that have not yet been resolved by this Court, had occasion to consider Section 772(a), even before its application in this case. *See, e.g., Geyer, supra* (Section 772(a) considered but deemed inapplicable because defendant's statements about plaintiff were not believed by jury to be true); *Yaindl, supra* (stating in *dicta* that if defendant's statements were true, there would be no improper interference under Section 772). *See also Kachmar, supra* (truthfulness might be useful along with Section 767 factors in determining whether interference is actionable, but noting that Pennsylvania Supreme Court has not yet adopted Section 772). Now that Restatement (Second) of Torts § 772(a) is squarely before us,

original). However, that statement was clearly *dicta;* the court concluded that the challenged communications in that case—which caused the plaintiff to get fired—were at least partially false. *Id.* Also, the court did not mention the Restatement (Second) of Torts § 772(a), or the associated commentary in the Second Restatement, relying instead on the 1960 *Birl* case and its citation to the First Restatement § 766. *Id.* at 295. In any event, for the reasons developed in the text, the *Collincini dicta* is obviously disapproved by our determination in this case.

we hold that the Superior Court properly determined that Section 772(a) should apply, and that it controls under the facts of this case.

There is no dispute that BCI's employee Macrone intentionally imparted information about WSA's compensation to Procacci, when Procacci was seeking lower employee health insurance costs, and that the information was truthful. As a result of its learning that truth, Procacci fired WSA as insurance broker of record. The question is whether BCI's intentional interference with the Procacci/WSA contract was improper, and thus actionable. The jury found that the interference was improper, but only after being instructed on the Section 767 factors. The parties do not dispute that, if the trial court had deemed Section 772(a) applicable as BCI advocated, BCI would have been entitled to judgment as a matter of law. In our view, the Superior Court properly determined that Section 772(a)—the more specific Restatement provision regarding truthful disclosures—was available to BCI, rather than the more general Section 767 factors, exclusively.

As we have noted, Section 772 addresses a particular, recurring subclass of cases involving the construction of what may be deemed to be "improper" (and hence actionable) interference with contractual relations. Section 772 provides that it is not improper interference if the defendant is merely giving the third person: "(a) truthful information, or (b) honest advice within the scope of a request for the advice." The comments to Section 772 amplify the meaning of subsection (a):

*a.* This Section is a special application of the general test for determining whether an interference with an existing or prospective contractual relation is improper or not, as stated in §§ 766–766B and 767. Comments to those Sections may be relevant here.

*b. Truthful information.* **There is of course no liability for interference with a contract or with a prospective contractual relation on the part of one who merely gives truthful information to another. The interference in this instance is clearly not improper.** This is true even

though the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested. Compare § 581A, on the effect of truth in an action for defamation.

RESTATEMENT (SECOND) OF TORTS § 772, cmts. a-b (emphasis added).

Of course, the fact that the Second Restatement contains this refinement, and explicitly provides that the conveyance of truthful information is not "improper" interference, is not reason alone for this Court to "adopt" the provision, or to deem it a proper statement of Pennsylvania law. We adopt the provision, instead, because we believe the formulation is consistent with the very nature of the tort, and with Pennsylvania law.[13] And, in this instance, we need not belabor the reasons why we believe that the elaboration is a proper understanding of what comprises improper conduct. The Restatement commentary we have set forth above amply explains why the conveyance of truthful information cannot reasonably be deemed to be "improper" interference. It would be strange, indeed, to deem disclosures of mere truth to be actionable. Those who would shield their contracting partners from non-privileged information that might affect those partners' business decisions properly run a risk that speech in the form of a truth, when disclosed, might imperil the relationship. Application of these precepts to the facts in this case leads us to hold as a matter of law that BCI's truthful statement to Procacci about WSA was not an improper interference, and cannot, on its own, support a claim for tortious interference with contractual relations.

13. As stated by the Superior Court in its opinion, and by BCI in its brief, courts in a majority of states have held that an action for tortious interference may not be based on truthful statements. *See Walnut St.,* 982 A.2d at 101 n. 7 (collecting cases); Appellee's Brief at 19–22 (collecting cases). *See also* RESTATEMENT (SECOND) OF TORTS § 772, Annotations.

Furthermore, we reject WSA's argument that the adoption of Section 772(a) in this case comprises an improper retroactive application that unfairly "change[s] the playing field." Appellant's Brief at 23. "While retroactive application of a new rule of law is a matter of judicial discretion usually exercised on a case-by-case basis, the general rule is that a decision announcing a new rule of law is applied retroactively so that a party whose case is pending on direct appeal is entitled to the benefit of changes in the law." *Kituskie v. Corbman*, 552 Pa. 275, 714 A.2d 1027, 1030 n. 5 (1998). *See also Leland v. J.T. Baker Chemical Co.*, 282 Pa.Super. 573, 423 A.2d 393, 397 n. 7 (1980) (citing Note, *The Retroactivity of Minnesota Supreme Court Personal Injury Decisions*, 6 WM. MITCHELL L.REV. 179, 196–97 (1980)) ("by applying the new law to the case before the court, the policy of providing incentive for challenging outmoded legal doctrines is served"). "Courts will deviate from the general rule of retroactivity and apply a new rule of law purely prospectively where: (1) the decision to be applied non-retroactively established a new principle of law; (2) a retrospective application will retard application of the old rule of law; and (3) retroactive application will lead to an inequitable result which imposes an injustice or hardship." *Kituskie*, 714 A.2d at 1030 n. 5.

First of all, our holding does not amount to an adoption of an entirely new rule of law. The Restatement provision, which was first published in 1979, merely explicates the long-standing, existing rule concerning improper interference; the specific application follows logically from the general principle and nature of the tort. Our formal "adoption" of Section 772(a) as an accurate application of the general principle respecting what amounts to "improper" interference does not overrule any governing contrary precedent, and no existing "old rule" is impaired. Indeed, if anything, our agreement with, and adoption of Second Restatement Section 772(a), was foreshadowed by this Court's citation to former Section 772 in *Menefee*, our reliance on related Sections 766 and 767 in *Adler Barish*, and the very fact that we have looked to the Restatement in our prior considerations of the tort.

WSA's argument that it would not have gone to the expense of the lawsuit and trial if it had known that Section 772(a) would be deemed applicable is not the sort of "injustice or hardship" that would weigh in favor of denying BCI the benefit of our sustaining its logical position. Notably, WSA does not claim that its primary conduct—the failure to disclose information to Procacci that might imperil its contractual relationship—occurred because it had an expectation that it could sue anyone who disclosed the truth to Procacci, and that expectation has now been unsettled. But, even if WSA had argued such an expectation, it is difficult to see why BCI, having itself gone to the expense of defensive litigation, should be denied the benefit of a rule that ensures a proper calibration of policy in claims of tortious interference. Since the pleading stages, BCI maintained that it was shielded from liability because its statements to Procacci were true or otherwise privileged. At trial, BCI requested a jury charge on Section 772(a), and also argued its applicability in post-trial motions and on appeal. BCI's position was rooted squarely in the nature of the tort and in the history and structure of the Second Restatement, and there was nothing in our governing decisional law to suggest that we would reject this logical elaboration. BCI had as much right to advocate for recognition of the elaboration as represented by Section 772(a) as WSA had to urge that the tort should be deemed frozen in time.

Finally, we offer some guidance in light of WSA's argument concerning the power of the Superior Court to adopt a provision of the Restatement. It is beyond peradventure that the Superior Court must follow this Court's mandates, and it generally lacks the authority to determine that this Court's decisions are no longer controlling. *Commonwealth v. Jones*, 520 Pa. 385, 554 A.2d 50, 51–52 (1989). Moreover, the intermediate appellate courts are duty-bound to effectuate this Court's decisional law. *See, e.g., Behers v. Unemployment Comp. Bd. of Review*, 577 Pa. 55, 842 A.2d 359, 367 (2004) (task of lower courts is "to effectuate the decisional law of this Court, not to restrict it through curtailed

readings of controlling authority"). But, WSA's suggestion that the Superior Court lacked the authority to apply Section 772(a) simply because the provision had not yet been explicitly adopted by this Court is mistaken. Also incorrect is WSA's assertion that *Adler Barish*, which relied on Section 767, provides the exclusive method for analyzing a tortious interference claim, and is thus controlling precedent in this case. As we have stated, Section 772(a) was not considered by this Court in that case. *But see In re Estate of Stephano*, 602 Pa. 527, 981 A.2d 138, 141–42 (2009) (lower courts erred in ignoring controlling Supreme Court precedent directly on point and instead adopting new Restatement of Trusts provision). When open questions, or close questions, are presented to the intermediate appellate courts, they should look closely to our precedent for guidance. There is nothing improper in those courts deciding new or close issues, consistently with their duty to master, and act consistently with, this Court's teachings. This is the same role this Court plays when deciding many questions of federal law; there is no institutional prohibition upon the power of the intermediate appellate courts to act to decide the questions fairly, and squarely, presented to them.

For the foregoing reasons, we hold that BCI's truthful statements to Procacci were not actionable in this claim for tortious interference, and accordingly, we affirm the Superior Court's decision.

Order affirmed.

Justices SAYLOR, EAKIN, BAER, TODD, and McCAFFERY join the opinion.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.