J-S25033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| STOBBA RESIDENTIAL ASSOCIATES, L.P. AND STOBBA ASSOCIATES, L.P. | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : : | |
| v. | : : : | |
| | : | No. 487 EDA 2023 |
| FS RIALTO 2019-FL 1 HOLDER, LLC AND RIALTO CAPITAL ADVISORS, LLC | : : : | |

Appeal from the Order Entered February 7, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210602543

BEFORE: NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED DECEMBER 11, 2023**

Stobba Residential Associates, L.P. and Stobba Associates, L.P. (collectively Borrower) appeal from the order entered in the Philadelphia County Court of Common Pleas granting summary judgment in favor of FS Rialto 2019-FL 1 Holder, LLC and Rialto Capital Advisors, LLC (collectively Lender), in this action seeking damages for, *inter alia*, breach of contract in connection with a mortgage loan. On appeal, Borrower argues the trial court erred or abused its discretion in granting summary judgment to Lender when there are genuine issues of material fact concerning whether Lender breached a duty of good faith by failing to respond to Borrower's forbearance request, whether Lender committed a material breach of the Loan Agreement by instituting a money judgment action, and whether Lender tortiously interfered

with Borrower's contract with a third-party lessee. Borrower also contends the trial court erred in granting summary judgment on its declaratory judgment claim, which was contingent on the other claims. For the reasons below, we affirm.

The relevant facts underlying this appeal are aptly summarized by the trial court as follows:

On August 2, 2019, Lender's predecessor in interest FS Creit Originator LLC made a loan to Borrower in the amount of $24,250,000. The Loan is evidenced by a Loan Agreement ("The Loan Agreement") and a Promissory Note (the "Note") and is secured by an Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Mortgage"). Borrower also executed a Deposit Account Control Agreement (the "DACA").

The Loan Agreement requires Borrower to make monthly payment to Lender on each payment date. The Loan Agreement provides that an "Event of Default" occurs if, "any portion of the Debt is not paid on or before the date the same is due and payable."

Borrower granted Lender a security interest in the Property defined to include specific units within Headhouse Flats and Abbots Square developments in Philadelphia, and all Leases and Rents in connection with the Property. To protect the security interest in the Property, Borrower is required to have all tenants deposit rents into the DACA Account at Wells Fargo. The contents of DACA are to be disbursed into the Cash Management Account at Wells Fargo daily.

Borrower has not made any payments on the Loan since December 2020. Additionally, the Loan matured on August 9, 2022[,] and Borrower has not paid the Loan in full. Borrower contends its performance under the Loan Agreement is excused due to Lender's pre occurring breaches.

**Pending Lawsuits**

On May 21, 2021, Lender commenced an action alleging breach of contract against Borrower. Lender alleges that Borrower breached the Loan Agreement by failing to make the required monthly payments, failing to provide financial reporting and misrepresenting the status of tenant leases at the Property. Borrower filed an Answer with New Matter and Counterclaims.

In June 2021, Lender filed a Petition to Appoint a Receiver. The [trial c]ourt denied the Petition to Appoint a Receiver but ordered Borrower to provide Lender and the Court with certain records and required that Borrower instruct the tenants to pay rent as required by the Loan Agreement. The Order has been appealed to the Pennsylvania Superior Court by Borrower and Lender.[1]

Lender also filed an action to Confess Judgment against the Guarantor Eric Blumenfeld, which is currently stayed pending the resolution of the Lender Action and this action. Additionally, Lender filed a Mortgage Foreclosure action against Borrower.

**The Giant Lease**

On March 9, 2016, Fresh Formats, LLC ("Fresh Formats") entered into a Lease with Borrower for commercial space at Abbotts Square to operate a "Bfresh" Market. The Fresh Formats' Lease was assigned to Giant Food Stores, LLC ("Giant") on December 31, 2017. Giant agreed to accept the premises "as is" and began paying rent to Borrower.

---

[1] Both Lender and Borrower appealed, and on March 1, 2023, a panel of this Court vacated the trial court's order and remanded for further proceedings. *See SKW-B Acquisitions Seller C, LLC v. Stobba Residential Assocs., L.P.*, 73 EDA 2022 & 101 EDA 2022 (unpub. memo. at 2) (Pa. Super. Mar. 1, 2023). First, the panel vacated the trial court's decision to grant alternate relief to Lender because Lender only requested "an order for a receivership[;]" thus, the panel concluded there was "no proper foundation in the record for alternative relief." *Id.* at 12. With regard to Lender's request for the appointment of a receiver, the panel determined the trial court did not properly consider "whether appointment of a receiver is warranted under common law." *Id.* at 17. Accordingly, the panel remanded the matter for further proceedings. *See id.*

In December 2019, Giant began to fit the space for use as a grocery store and discovered the leased space was not serviced by 277/480-volt, 800 amp electric, the electric service Giant required for its purposes. In March 2020, due to the COVID 19 Pandemic, the City of Philadelphia and the Commonwealth of Pennsylvania issued orders shutting down Giant's fitting out of the space. Additionally, construction stalled because PECO required the entire building be converted to High Tension Service to accommodate Giant's electric needs.

On August 31, 2020, Giant issued a notice of default to Borrower because Borrower failed to provide Giant with 277/480-volt, 800 amp electric service. On November 20, 2020, Giant stopped paying rent to Borrower and on December 23, 2020, Giant filed a lawsuit against Borrower in the Eastern District of Pennsylvania alleging breach of the Lease.

On February 18, 2021, during an email exchange between Borrower and Lender, Borrower provided an update to Lender regarding the Giant electric issue including the lawsuit filed by Giant against Borrower. At Lender's request, Borrower provided Lender with documents including its engineering report, Giant's default letter, engineering drawings and the Lease. Thereafter, the following emails were exchanged between Lender and Borrower regarding the Giant issue:

— On March 1, 2021, Lender emailed Borrower as follows: "we [Lender] have some contacts at Giant that we have worked with a lot in the past. Do you mind if we [Lender] reach out to them to discuss their thoughts on what's going on here?["]

— On March 1, 2021, Borrower responded, ". . . if you feel that a conversation between Rialto [Lender] and Giant will be helpful then please do so . . . I hope the conversation is fruitful."

— On March 2, 2021, Lender sent an email to Giant stating in part, ". . . We [Lender] are involved in this deal as the lender and understand that there is a little bit of a disconnect regarding the delivery of the specific electrical service that you require, so we wanted to quickly touch base[ ] with you on this. Might you have some time this week for a quick call?"

— On March 4, 2021[,] 10:36 a.m., after having received no response from Giant to the March 2, 2021 email, Lender sent a follow up email.

— On March 4, 2021, 10:35 a.m., Borrower emailed Lender stating that after speaking with Blumenfeld, "and apologies for the reversal but Blumenfeld did not want lender/tenant communications. We have an opportunity to right size our process and he feels your involvement might skew our process."

— On March 4, 2021, at 10:51 a.m., Lender emailed Giant and asked them to ". . . please disregard the request for the call . . . ."

— On March 4, 2021[,] at 11:33 a.m., Giant emailed Lender and apologized for the delayed response and stated ". . . After talking with counsel I've been advised not to comment because of pending litigation. I would suggest you seek a copy of the pleadings."

Kimley-Horn, an engineering firm hired by Lender regarding the electric issue, conducted an onsite investigation of the Giant space on March 12, 2021[,] and issued a report to Lender on April 12, 2021.

On May 20, 2021, Borrower emailed Lender with the following update:

Borrower provided Lender with correspondence from Giant's Chief engineer outlining the additional requirements from PECO over and above the cost of installing the HT service at Abbots Square. We [Borrower] believe that the approximate cost of these 2 components will be in the range of $500k. We are currently working with the local code officials to see if some concessions can be made to address Giant's concerns as outlined in the letter. It is our intention to resolve these issues and then agree to split these costs with Giant to move forward. Eric [the Guarantor] has asked that I keep you advised as to the progress on a regular basis.

On July 1, 2021, Giant voluntarily dismissed the action filed against Borrower without prejudice and entered into a consensual Stay and Tolling Agreement to attempt resolution of their dispute consensually.

**Forbearance Requests**

The Borrower submitted two requests to Lender for loan forbearance, [on] April 27, 2020[,] and September 3, 2020. Lender received the requests, requested information to support the requests but, Lender never presented Borrower with a forbearance agreement.

**This Action**

On July 1, 2021, Borrower filed this action against Lender ("Borrower Action"). Lender filed Preliminary Objections to the Complaint which were overruled by the [trial c]ourt. On January 18, 2022, Borrower filed an Amended Complaint. The Amended Complaint alleges causes of action for breach of contract/breach of the duty of good faith and fair dealing (count I), tortious interference with contract (count II), promissory estoppel/detrimental reliance (count III), and seeks a declaratory judgment (count IV). Lender filed Preliminary Objections to the Amended Complaint which were overruled . . . on March 8, 2022. On March 23, 2022, Lender filed an Answer with New Matter to the Amended Complaint. . . .

Trial Ct. Op., 2/7/23, at 1-7 (footnotes & record citations omitted).

Lender filed a motion for summary judgment and accompanying memorandum of law on October 17, 2022. Borrower responded on November 17th with an answer and memorandum of law. On February 6, 2023, the trial court filed an order and concomitant opinion granting Lender's motion and entered judgment in favor of Lender and against Borrower on all claims. **_See_** Order, 2/7/23. This timely appeal follows.[2]

---

[2] The trial court did not direct Borrower to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Further, on March 7, 2023, the trial court filed an opinion which "adopted and incorporated . . . by reference" its February 7th opinion as support for its decision. **_See_** Trial Ct. Op., 3/7/23, at 1 (unpaginated).

Borrower presents the following four issues for our review:

1. Did the trial court err as a matter of law and/or abuse its discretion by granting summary judgment in [Lender's] favor on [Borrower's] claim for breach of contract/breach of the duty of good faith and fair dealing where there is a genuine issue of material fact for a fact finder as to whether [Lender] reasonably exercised its discretion to approve or deny loan forbearance requests?

2. Did the trial court err as a matter of law and/or abuse its discretion by granting summary judgment in [Lender's] favor on [Borrower's] claim for breach of contract where: (1) the trial court incorrectly interpreting the Exculpation Clause in the Loan Agreement; and (2) there is a genuine issue of material fact for a fact finder as to whether [Lender's] breaches of the Loan Agreement are material?

3. Did the trial court err as a matter of law and/or abuse its discretion by granting summary judgment in [Lender's] favor on [Borrower's] claim for tortious interference with contract where genuine issues of material fact exist relating to the claim?

4. Did the trial court err as a matter of law and/or abuse its discretion by granting summary judgment in [Lender's] favor on [Borrower's] claim for a declaratory judgment that, *inter alia*, [Lender's] first-occurring material breaches of the loan documents . . . excused and/or discharged [Borrower's] performance under the loan based upon the trial court's erroneous reasons for denying [Borrower's] other claims?

Borrower's Brief at 2-3 (some capitalization omitted).[3]

When considering an order granting summary judgment, our "standard of review is *de novo,* and our scope of review is plenary." ***Khalil v. Williams***,

---

[3] Borrower does not challenge that portion of the trial court's order dismissing its claim for promissory estoppel. ***See*** Borrower's Brief at 21 n.4.

278 A.3d 859, 871 (Pa. 2022) (citation omitted). We are guided by the following:

> [A] trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. It is the moving party's burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. The trial court must also resolve any doubts as to the existence of a genuine issue of material fact against the moving party and "may grant summary judgment only where the right to such a judgment is clear and free from doubt."
>
> [Thus, a]n appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion. . . .

*Id.* (citation omitted & paragraph break added).

In its first issue, Borrower contends the trial court erred when it granted summary judgment on its claim that Lender breached its duty of good faith and fair dealing by refusing to respond to its two requests for forbearance relief. *See* Borrower's Brief at 21. While Borrower acknowledges Lender had the discretion to grant or deny its requests for forbearance relief, it insists the fact that Lender "never reasonably considered the requests or, at bare minimum, communicated to [Borrower] that its requests were going to be denied is indicative of a breach of good faith and fair dealing[.]" *See id.* at 22-23. Moreover, Borrower contends the trial court erred by failing to consider whether Lender "reasonably exercised its discretion" when, in fact, at the time of its requests, Borrower was "routinely granting forbearance to [other] borrowers" due to the COVID-19 pandemic. *Id.* at 24.

We have recognized that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Tr. Co.*, 560 A.2d 151, 153 (Pa. Super. 1989), *citing* Restatement (Second) of Contracts § 205. However, "[s]uch an inherent duty of good faith does **not** extend to the lender-borrower relationship." *Cable & Assocs. Ins. Agency, Inc. v. Com. Nat. Bank of Pa.*, 875 A.2d 361, 364 (Pa. Super. 2005). Rather:

> It seems reasonably clear from the decided cases that a lending institution does not violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as a creditor. **The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract.** Similarly, it cannot be said that a lender has violated a duty of good faith merely because it has negotiated terms of a loan which are favorable to itself. As such, a lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons. A lending institution also is not required to delay attempts to recover from a guarantor after the principal debtor has defaulted. . . .

*Creeger*, 560 A.2d at 154 (emphasis added).

In *Creeger*, this Court concluded a borrower could not state a cause of action against its lender based upon the lender's purported "failure to deal with its borrower in good faith" when the lender did not breach any specific provision of the loan agreement, but instead allegedly failed to modify the terms of the agreement to permit the borrower to obtain supplemental funding. *See Creeger*, 560 A.2d at 153, 155. Similarly, in *Cable*, this Court determined that a lender's refusal to "surrender its security interest on [the

borrower's] property (accounts receivable) so that [the borrower] could sell or transfer the property" could not "as a matter of law, . . . constitute a breach of contractual good faith." *See Cable*, 875 A.2d at 364.

Here, the trial court found that, pursuant to Section 9.2 of the parties' Loan Agreement, Lender had the absolute discretion to grant or deny a request for forbearance, and its refusal to grant forbearance did not "excuse Borrower's performance" under the agreement. *See* Trial Ct. Op. at 12-13. We agree.

Section 9.2 provides, in relevant part:

> **Section 9.2** Lender's Discretion. Whenever pursuant to this Agreement Lender exercises any right given to it to approve or disapprove any matter, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove such matter or to decide whether arrangements or terms are satisfactory or not satisfactory shall (except as is otherwise specifically herein provided) be in the sole and absolute discretion of Lender and shall be **final and conclusive**. . . .

Borrower's Amended Complaint, 1/18/22, Exhibit A, Loan Agreement, 8/2/19 (Loan Agreement) at § 9.2 (emphasis added). Pursuant to the explicit terms of the Agreement, Lender's refusal to grant Borrower's requests for forbearance is a "final and conclusive" decision, not subject to review on appeal. *See id.*

Nevertheless, Borrower asserts that the determination of whether Lender "reasonably exercised its discretion" by either refusing to consider or outright denying its requests for forbearance constitutes "a genuine issue of material fact" for the jury. *See* Borrower's Brief at 24. We disagree. As

- 10 -

explained in **Creeger** and **Cable**, the implied contractual duty of good faith does not "compel a lender to surrender rights . . . conferred to the lender by the terms of the loan contract" — such as the timely payment of funds due. **See Cable**, 875 A.2d at 364; **Creeger**, 560 A.2d at 154. Thus, contrary to Borrower's argument, Lender had no obligation to even **consider** its forbearance request, and the trial court properly granted summary judgment to Lender on Borrower's breach of duty of good faith and fair dealing claim.

Next, Borrower insists the trial court misinterpreted the Exculpation Clause in the Loan Agreement, and, therefore, "robbed the finder of fact of the opportunity to consider" whether Lender committed a material breach of the Agreement which excused Borrower's performance. **See** Borrower's Brief at 28. Borrower contends the Exculpation Clause "clear[ly] and unambiguous[ly]" prohibits Lender from recovering any money damages for the "Debt of the Loan." **Id.** at 26. Instead, Lender's only option is to "institute a foreclosure or other action [seeking] an *in rem* judgment against [Borrower's] interests in the Property, the Rents, and any other collateral." **Id.** It insists that Lender breached this clause by instituting the May 2021 breach of contract action seeking a monetary judgment, and that Lender's breach excuses its own non-performance. **See id.** at 25. Thus, Borrower maintains a question of fact remains as to whether Lender's breach constituted a "material breach . . . excusing [its own] performance[.]" **Id.** at 28.

The Exculpation Clause in the parties Loan Agreement provides, in relevant part, as follows:

**Section 8.6** <u>Exculpation</u>. Subject to the qualifications below, Lender shall not enforce the liability and obligation of Borrower to perform and observe the obligations contained in this Agreement, the Note or the Security Instrument by any action or proceeding wherein a money judgment shall be sought against Borrower, except that Lender may bring a foreclosure action, action for specific performance or other appropriate action or proceeding to enable Lender to enforce and realize upon the Note, the Security Instrument, the other Loan Documents, and the interest in the Property, the Rents and any other collateral given to Lender created by this Agreement, the Note, the Security Instrument and the other Loan Documents; provided, however, that any judgment in any such action or proceeding shall be enforceable against Borrower only to the extent of Borrower's interest in the Property, in the Rents and in any other collateral given to Lender.  Lender, by accepting this Agreement, the Note and the Security Instrument, agrees that it shall not, except as otherwise provided in the Security Instrument, sue for, seek or demand any deficiency judgment against Borrower in any such action or proceeding, under or by reason of or under or in connection with this Agreement, the Note, the other Loan Documents or the Security Instrument.  The provisions of this Section 8.6 shall not, however, . . . (g) constitute a waiver of the right of Lender to enforce the liability and obligation of Borrower, by money judgment or otherwise, to the extent of any Losses arising out of or in connection with the following:

(i) fraud or intentional or material misrepresentation by Borrower, Guarantor or any of their respective Affiliates or agents in connection with the Loan;

(ii) the gross negligence or willful misconduct by or on behalf of Borrower, Guarantor or any of their respective Affiliates or agents in connection with the Loan;

\* \* \*

(iv) the misappropriation, misapplication or conversion by Borrower of (A) any Insurance Proceeds paid by reason of any Casualty, (B) any Awards or other amounts received in connection with a Condemnation of all or a portion of the Property, or (C) any Rents; . . . .

Loan Agmt at § 8.6.

In its opinion, the trial court explained it "already ruled that the Loan Agreement **does** permit Lender to bring a money judgment action against Borrower under the Exculpation Clause" in its January 24, 2023, order denying Borrower's motion for summary judgment in the money judgment action brought by Lender. **See** Trial Ct. Op. 11 (emphasis added). In that action, Borrowers argued, *inter alia*, that "Lender's [c]omplaint improperly seeks a monetary judgment for the "Debt" of the Loan in violation of the Exculpation Clause contained in § 8.6 of the Loan Agreement." **See SKW-B Acquisitions Seller C, LLC v. Stobba Residential Assocs.**, L.P., May Term 2021 No. 1951, Order, 1/24/23, at 1 n.1.[4] The court ruled against Borrower for two reasons: (1) the Exculpation Clause permitted Lender to "recover monetary damages . . . but only to the extent of Borrower['s] interest in the Property, the Rents and any other collateral given to Lender in this action[;]" and (2) the Exculpation Clause permitted Lender to recover "Losses" independent from the debt "arising out of or in connection with[, *inter alia*,] fraud or intentional or material misrepresentations, gross or willful misconduct, misappropriation or misapplication of rents[.]" **Id.** at 2 n.1.

We need not determine whether the trial court's ruling in Lender's action was correct as we conclude that, even assuming *arguendo* Lender breached the Exculpation Clause by instituting the other action, such a breach would

_____

[4] The trial court's January 24, 2023, Order in the other action is included in the Appendix of Borrower's brief.

- 13 -

not excuse Borrower's non-payment of its loan obligations. Rather, the remedy for Lender's breach of the Exculpation Clause would be dismissal of Lender's money judgment action — not excusal of Borrower's non-payment of the loan. Moreover, Lender alleged that Borrower failed to pay its "Monthly Debt Service Payment Amount" beginning in December of 2020, and continuing through November of 2021. *See* Lender's Motion for Summary Judgment, 10/17/22, at ¶ 24.[5] Therefore, Borrower breached its obligations under the Loan Agreement **before** Lender filed the May 2021 money judgment action. Thus, we conclude the trial court did not err in determining there was no genuine issue of material fact concerning a potential breach of the Exculpation Clause.

In its third issue, Borrower contends the trial court erred in concluding it "failed to adduce sufficient evidence" to support a claim of tortious interference with a contract based upon Lender's purported interference with Borrower's contractual relationship with Giant. *See* Borrower's Brief at 28 (citation & quotation marks omitted). Borrower insists it demonstrated the following: (1) Lender had an existing relationship with Giant; (2) Lender purposely communicated with Giant regarding the alleged electrical issue when Borrower instructed it not to do so; (3) Lender's actions were not privileged and a genuine issue of material fact exists as to its motivation; and

_____

[5] The only exception was in February of 2021, when Borrower apparently made the required payment. *See* Lender's Motion for Summary Judgment at ¶ 24.

(4) the "escalation of the dispute" due to Lender's interference "resulted in legal damages . . . vis-à-vis the related costs of litigation" from Giant's lawsuit against Borrower. *See id.* at 29-30.

In order to establish a cause of action for intentional interference with a contractual relationship, a plaintiff must demonstrate:

> (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. 2009), *aff'd*, 20 A.3d 468 (Pa. 2011).

In concluding Borrower did not present sufficient evidence to support its claim, the trial court opined:

> [W]hile a contractual relationship existed between Borrower and Giant, there is no evidence that Lender caused any harm to Borrower by interfering with that relationship. Lender, with Borrower's consent, did email Giant to schedule a time to discuss the electrical service at the leased space, but the record clearly shows that Lender and Giant never spoke about the electrical issue. Even before Giant responded to Lender's request for a call, Borrower reversed course, and asked Lender not to discuss the matter with Giant. This [c]ourt could not find any evidence and Borrower did not direct this [c]ourt to any evidence that Lender disregarded Borrower's email and engaged in any discussions with Giant to harm Borrower's relationship with Giant. The record is clear that Lender honored Borrower's request and emailed Giant telling them to disregard the request for the call.
>
> Additionally, not only does the record show that Lender honored Borrower's request, but it also shows that Giant did not wish to engage in any such discussions with Lender and was instructed by its legal counsel not to speak to Lender about the

- 15 -

issue due to the pending lawsuit.  At best, the evidence shows that Lender attempted to "interfere[,"] but the attempted "interference" was with the consent of Borrower.

[Moreover], there is no evidence that Lender's "interference" caused Borrower actual damage.  Borrower alleges and argues that as a result of Lender's "interference[,"] Giant stopped paying rent and filed a lawsuit.  However, Lender's "interference" in March 2021 could not have caused Giant to stop paying rent in November of 2020 and to file the lawsuit in December 2020 as Lender's "interference" occurred after the harm which Borrower attributes to Lender.  [Further, **after** the alleged interference, Giant voluntarily dismissed the lawsuit against Borrower without prejudice in July of 2021.]

Trial Ct. Op. at 8-9 (footnotes & record citations omitted; paragraph break added).

We detect no error or abuse of discretion in the trial court's decision. Put simply, Borrower presented no evidence to support its assertion that Lender intentionally interfered with its contract with Giant in an attempt to harm Borrower or that Borrower suffered any actual damages resulting from Lender's purported interference.  The evidence Borrower cites in its brief does not support its claim.  *See* Borrower's Brief at 29-30.

First, the relevant emails demonstrate that while Lender did attempt to reach out to Giant in March of 2021 — with Borrower's permission — it never actually discussed the electrical issue with Giant.  *See* Lender's Motion for Summary Judgment at Exh. M, Emails dated 3/1/21 (Lender informing Borrower it had "some contacts at Giant" and asking, "Do you mind if we reach out to them to discuss their thoughts on what's going on here?" to which Borrower responds, "if you feel that a conversation between [Lender] and Giant will be helpful then please do so."); Exh. N, Emails dated 3/2/21 and

- 16 -

3/4/21 (Lender emailing Giant on March 2, 2021, to "touch base" on the issue, and then, on March 4th, informing Giant to "disregard [its] request for a call[,]" after which Giant responded to Lender that it had been advised by counsel "not to comment because of pending litigation"). ***See also id.*** at Exh. O, Email dated 3/4/21 (Borrower sending "apologies" to Lender on March 4th "for the reversal" but explaining it did not want "lender/tenant communication").

Second, although Lender did commission an engineering firm, Kimley-Horn, to investigate the electrical issue, the report issued by the firm was never shared with Giant. ***See*** Lender's Motion for Summary Judgment at Exh. H, N.T., 11/12/21, at 80.[6]  We fail to see how the commissioning of the report, in and of itself, establishes that Lender interfered with Borrower's contractual relationship with Giant.

Third, although Borrower's representative — Eric Blumenfeld — testified that one of Lender's employees told him "they were in touch with Giant[,]" he admitted the employee provided no specifics as to what was said. ***See*** Lender's Motion for Summary Judgment at Exh. L, N.T., 11/18/21, at 15, 31.[7] Thus, this testimony does not establish any more alleged "interference" than the email exchanges cited above.

---

[6] This hearing was conducted in Lender's money judgment action against Borrower.

[7] This hearing was also conducted in Lender's action.

Fourth, Borrower cites no evidence supporting its bald assertion that "[i]t was only after [Lender] meddled in the situation that Giant began insisting on [an] upgrade [for] the electrical service" of the property. *See* Borrower's Brief at 30. Indeed, the letter from Giant to Borrower that Borrower references — in which Giant informed Borrower the electric load of the building is insufficient — is dated August 31, 2020, six months **before** Lender requested permission to contact Giant in an attempt to help resolve the issue. *See* Borrower's Response to Lender's Motion for Summary Judgment & Counterstatement of Facts, 11/17/22, at Exh. 17 (Letter from Giant to Borrower dated 8/31/20). Accordingly, Borrower's third issue fails.

Lastly, Borrower contends the trial court erred in granting Lender summary judgment on its declaratory judgment cause of action. *See* Borrower's Brief at 31. However, as Borrower acknowledges, its request for a declaratory judgment is based upon its other claims — namely, that Lender breached its duty of good faith by refusing to consider Borrower's forbearance requests and breached the Loan Agreement by instituting the money judgment action, both of which would excuse Borrower's own non-performance and void the purported default. *See id.* Accordingly, Borrower asserts: "Because the [t]rial [c]ourt's decision to dismiss the claim for declaratory relief is based on its decisions denying [the] other causes of action," the court's decision is "erroneous for the reasons discussed above." *Id.*

However, as explained **supra**, we conclude the trial court did not err in granting summary judgment to Lender on Borrower's other claims. Thus, we agree Borrower's claim for declaratory judgment fails as well. **See** Trial Ct. Op. at 14.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/11/2023