J-S10007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES HUSSEY, | |
| Appellant | No. 1701 EDA 2016 |

Appeal from the Judgment of Sentence Entered January 11, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001919-2014

BEFORE:  BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 20, 2017**

Appellant, James Hussey, appeals from the judgment of sentence of an aggregate term of 4 to 8 years' incarceration, imposed after a jury convicted him of various sexual offenses committed against a minor female victim. Appellant raises seven claims on appeal, including challenges to evidentiary decisions by the trial court, as well as the legality of his sentence.  After careful review, we affirm.

Briefly, Appellant's convictions stemmed from his touching the victim, his niece, in a sexually inappropriate manner on two different occasions. Following a jury trial, Appellant was convicted of two counts each of the following offenses: indecent assault of a person less than 13 years of age, 18 Pa.C.S. § 3126(a)(7); endangering the welfare of a child (EWOC), 18 Pa.C.S. § 4304(a)(1); and corruption of a minor (COM), 18 Pa.C.S. § 6301. On January 11, 2016, Appellant was sentenced to consecutive terms of 1 to

2 years' incarceration for each count of indecent assault and EWOC for which he was convicted, totaling an aggregate term of 4 to 8 years' incarceration. Appellant's two counts of COM merged for sentencing purposes.

Appellant filed a timely post-sentence motion and the trial court conducted a hearing on that motion on February 23, 2016. On April 28, 2016, the court issued an order and an accompanying opinion denying Appellant's post-sentence motion. Appellant filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On June 20, 2016, the trial court issued a Rule 1925(a) opinion.[1]

On appeal, Appellant presents seven claims for our review:

1. Whether, prior to trial, the [t]rial [c]ourt committed an error of law when it denied [Appellant's] proffer of expert testimony on the phenomenon of false confessions in general, and where the trial court's ruling substantially agreed with

_____

[1] Therein, the trial court states that all of the issues raised by Appellant in his Rule 1925(b) statement were addressed in its April 28, 2016 opinion denying his post-sentence motion. The record belies the trial court's conclusion. In his Rule 1925(b) statement, Appellant presented seven issues for this Court's review; only one of those issues, a challenge to Appellant's sentence, was addressed by the court in its April 28, 2016 opinion. The lack of a trial court opinion regarding Appellant's remaining issues makes our review of his claims more difficult; however, it does not impede us from meaningfully assessing his arguments, as the reasons for the trial court's challenged rulings are evident in the record. Thus, while we could remand this case for the court to file an appropriate responsive opinion, we decline to do so.

*Com[monwealth] v. Alicia*, 625 Pa. 429[, 92 A.3d 753] (Pa. 2014) (disallowing testimony on false confessions in general)?

2. Whether, prior to trial and under ***Crawford v. Washington***, 541 U.S. 36 (2004), the [t]rial [c]ourt committed an error of law when it allowed the admission of the hearsay statements of the minor victim … made to Dr. Horn-Alsberge?

3. Whether, prior to trial, the [t]rial [c]ourt abused its discretion when it permitted the victim's mother … and Dr. Horn-Alsberge, to testify to the hearsay statements of the minor victim … and where the statements were redundant, needlessly cumulative, and unduly prejudicial?

4. Whether, prior to trial, the [t]rial [c]ourt abused its discretion when it permitted the introduction of … a "Story Book" compiled under the supervision of Dr. Horn-Alsberge containing an additional recitation of the minor victim's statement hand-illustrated by the minor victim and where this exhibit was needlessly cumulative and unduly prejudicial?

5. Whether, during trial, the [t]rial [c]ourt abused its discretion when it failed to apply the Business Records Exception and sustained the Commonwealth's objection to the testimony of Anna Parys of Monroe County Children and Youth?

6. Whether, during trial, the [t]rial [c]ourt committed an error of law when it limited [Appellant's] expert witness['s] testimony on the topic of false reports?

7. Whether, at sentencing, the [t]rial [c]ourt committed an error of law when it found that counts one and two, Indecent Assault, did not merge for sentencing purposes with counts three and four, [EWOC]?

Appellant's Brief at 9.

Appellant's first six issues challenge evidentiary rulings made by the trial court.

The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a

clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (citations omitted).

In Appellant's first issue, he challenges the trial court's decision to preclude him from presenting expert testimony regarding "the phenomenon of false confessions…." Appellant's Brief at 18. Appellant acknowledges that our Supreme Court has held that this specific type of expert testimony "constitutes an impermissible invasion of the jury's role as the exclusive arbiter of credibility." *Id.* (citing *Alicia*, 92 A.3d at 764). Appellant contends, however, that *Alicia* "should be overturned as violating [] Appellant's right to Due Process." *Id.*

This Court has no authority to overrule *Alicia*. Our Supreme Court has declared that "the intermediate appellate courts are duty-bound to effectuate [our Supreme] Court's decisional law." *Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 480 (Pa. 2011). The Court has also declared that "[i]t is beyond peradventure that the Superior Court must follow [the Supreme] Court's mandates, and it generally lacks the authority to determine that [the Supreme] Court's decisions are no longer controlling." *Id.* (citing *Commonwealth v. Jones*, 554 A.2d 50, 51-52 (Pa. 1989)). Accordingly, this Court cannot overturn our Supreme Court's decision in *Alicia*. As Appellant concedes that the trial

court followed **Alicia** in refusing to admit the at-issue expert testimony, his

challenge to the court's decision in that regard is meritless.

Next, Appellant contends that his Confrontation Clause rights were

violated because of how the Commonwealth presented the victim's

testimony in this case. The entirety of Appellant's argument is as follows:

> Here, the victim did not testify face to face, but testified via [a] contemporaneous alternative method. This is not problematic in itself, but was compounded by the fact that the victim was excused after her testimony and then her statements were re-introduced through other figures who could not then be cross-examined on the victim's statements to any meaningful effect. As such, the jury was presented with reinforced statements by the victim which were in no way meaningfully challenged by cross-examination. The prior opportunity to cross-examine, in such circumstances, cannot be deemed 'adequate.'

Appellant's Brief at 19.

Appellant's argument lacks citation to, let alone discussion of, any

pertinent legal authority. This Court has stated:

> When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Citations to authorities must articulate the principles for which they are cited.

> This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.

*Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007), *appeal denied*, 940 A.2d 362 (Pa. 2008) (citations omitted).

Even if Appellant's undeveloped argument was adequate to permit our meaningful review of his claim, he has nevertheless waived this issue by failing to cite to where in the record he objected to the Commonwealth's decision to call the victim to the stand first, and then excuse her before calling its other witnesses. Appellant indicates that this issue was raised in a pretrial motion filed on September 14, 2015. **See** Appellant's Brief at 10, 19. However, our review of that motion reveals that Appellant did not specifically assert this claim therein. Additionally, he did not object when the Commonwealth called the victim as its first witness at trial, nor when the victim's mother took the stand after the victim had testified. **See** N.T. Trial, 10/27/15, at 33, 74. Appellant also did not object when the victim's mother testified about statements made to her by the victim. **See id.** at 78, 81-83. Consequently, without Appellant's specifying where in the record he preserved the claim that his Confrontation Clause rights were violated by the victim's testifying first in this case, he has waived this claim for our review. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In Appellant's third issue, he argues that the trial court abused its discretion by admitting the testimony of the victim's mother and Dr. Michelle Horn-Alsberge, a psychologist who counseled the victim in this case.

- 6 -

According to Appellant, these witnesses' testimony should have been excluded under Pa.R.E. 403, which states:

> The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pa.R.E. 403.

Appellant's entire argument regarding why the testimony of the victim's mother and Dr. Horn-Alsberge should have been excluded under Rule 403 is as follows:

> The testimony of [the victim's mother] and Dr. Horn-Alsberge was needlessly repetitive of the victim's own testimony. Nothing testified to by either witness added anything to the trial beyond vouching for the victim's credibility. This testimony also unfairly prejudiced [] Appellant by supplanting the jury's role of judging the victim's credibility with judging other witness[es]' credibility who were not witnesses to the alleged criminal act. The danger of the jury['s] improperly relying upon the credibility of the victim's mother and doctor to establish that the sexual assault [occurred] … far outweighed the probative value of their testimony.

Appellant's Brief at 20.

Again, Appellant has presented this Court with an undeveloped argument that is insufficient to permit our meaningful review of his claim. Appellant does not cite to any case law to support his assertion that these witnesses' testimony should have been excluded under Rule 403. More problematic, however, is Appellant's total failure to point to *any specific testimony* by these witnesses that was cumulative or allegedly impeded the

jury's credibility determinations. Consequently, we deem this claim waived for our review. **See Hardy**, 918 A.2d at 771.

We reach the same conclusion for Appellant's fourth issue, in which he provides only one sentence of argument: "Given the similar bases for appeal, the discussion of issue three (3) above, suffices for a discussion of the admission of the 'Story Book' as well." Appellant's Brief at 21. Because Appellant's argument in support of his third issue was insufficient to avoid waiver of that claim, his fourth issue is waived as well. **See Hardy**, 918 A.2d at 771.

In Appellant's fifth issue, he asserts that the trial court abused its discretion by not permitting him "to introduce a Children and Youth [Services (CYS)] report containing statements by the victim and her mother," which, according to Appellant, "implicated a different person … in the sexual assault at issue in this case." Appellant's Brief at 22. At trial, defense counsel attempted to admit this report through the testimony of Anna Parys, a CYS employee who supervised the case regarding the victim's allegations of sexual abuse. **See** N.T. Trial, 10/28/15, at 34. The Commonwealth objected to the admission of the CYS report arguing, *inter alia*, that it contained hearsay. **See id.** at 35. In response, defense counsel argued that the report was admissible under the 'business record' exception to the rule precluding hearsay. The court agreed that the business record exception applied to admit the statements made in the report by the CYF employee who drafted it. **See id.** at 40. However, the court found that

there were "multiple layers of hearsay" in the report, and that defense counsel had not demonstrated an exception applied to each of those levels of hearsay. *Id.* at 42-43.

We ascertain no abuse of discretion in the court's decision. "'Hearsay' is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Hearsay is not admissible, unless one of the exceptions set forth in Pa.R.E. 803 applies. *See* Pa.R.E. 802. One such exception is the 'business record' exception, which is set forth in Rule 803(6), as follows:

> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Here, the parties do not dispute that the CYF employee's statements in the report were admissible under the business record exception. However, the report also contained statements made to the CYF employee by the victim, the victim's mother, and another family member. Appellant contends that these statements do not constitute hearsay because they "were not being offered to prove the truth of the matter" asserted, *i.e.*, "that [another individual] committed the sexual assault[.]" Appellant's Brief at 23. According to Appellant, "the statements were offered to prove that the victim was not telling the truth that [] Appellant committed the assault or that she was so confused about the sexual assault that she should not be credited by the jury." *Id.*

Appellant essentially argues that the report was admissible for impeachment purposes. However, at trial, defense counsel repeatedly stated that the report was *not* being offered as impeachment evidence; instead, counsel declared that she was seeking to admit the report as substantive evidence to prove the truth of the matter asserted therein, namely the truth of the statements made to the CYF employee by the victim, her mother, and another family member. *See* N.T. Trial, 10/28/16, at 38-41. Therefore, Appellant's argument that the statements contained within the CYS report were not being admitted to prove the truth of what they asserted was waived by counsel below.

Moreover, we agree with the trial court that the CYS record was hearsay itself, and that it contained layers of hearsay statements within it.

Specifically, the report discussed statements made by the victim, her mother, and another family member. Thus, Appellant was required to demonstrate that each of those layers of hearsay was covered by an exception to the rule precluding hearsay. *See **Hreha v. Benscoter***, 554 A.2d 525, 529 (Pa. Super. 1989) ("Where a business record contains multiple levels of hearsay … it is admissible only if each level falls within a recognized exception to the hearsay rule."). In this vein, defense counsel at trial only briefly argued that the victim's statements in the report fell within the 'party opponent' exception. ***See*** Pa.R.E. 803(25); N.T. Trial, 10/28/15, at 43. The Commonwealth countered that the victim was not a party in this case; rather, Appellant and the Commonwealth were the parties. N.T. Trial, 10/28/15, at 43. The trial court rejected defense counsel's attempt to admit the victim's statement under the 'party opponent' exception, and Appellant makes no argument on appeal that it erred in that regard.

In sum, Appellant's argument fails to demonstrate that the trial court abused its discretion in precluding the admission of the CYS report. The report itself, while admissible under the business record exception, contained multiple layers of hearsay statements by the victim, her mother, and another family member. Defense counsel stated that she was seeking to admit those statements to prove the truth of what they asserted, yet counsel failed to demonstrate the applicability of any exception to the rule precluding the admission of those hearsay statements. Accordingly, Appellant's fifth issue is meritless.

In Appellant's next claim, he argues that the trial court abused its discretion by precluding certain testimony by his expert witness, Dr. Frank M. Dattilio. Dr. Dattilio was admitted, without objection by the Commonwealth, "as an expert in the field of clinical and forensic psychology, specifically in the area of treatment of abuse victims." N.T. Trial, 10/28/15, at 11. The court clarified, prior to the doctor's taking the stand, that "his testimony will be limited to the general behavioral characteristics of victims of sexual assault pursuant to Title 42 [Pa.C.S.] § 5920." *Id.* That statute states:

§ 5920. Expert testimony in certain criminal proceedings

**(a) Scope.--**This section applies to all of the following:

(1) A criminal proceeding for an offense for which registration is required under Subchapter H of Chapter 97 (relating to registration of sexual offenders).

(2) A criminal proceeding for an offense under 18 Pa.C.S. Ch. 31 (relating to sexual offenses).

**(b) Qualifications and use of experts.--**

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S. § 5920 (footnote omitted).

During Dr. Dattilio's testimony, he was asked - without objection by the Commonwealth - if he could provide reasons "why a child would make a false allegation[]" of sexual abuse. N.T. Trial, 10/28/15, at 14. The doctor opined:

[Dr. Dattilio:] Well, there's actually four clinical subtypes. The first and most common is when there is a custody issue or there's intra[-]familial strife, one way or the other, a dispute between adults or family members. We find that 50 percent of false allegations come from that domain and is most common.

And the second may be because there was a mental illness, could be a delusional disorder, a paranoid disorder, or could be some drugs involved; usually with older individuals, teenage, 15, 16, 17, that age.

The third is when there may be conscious manipulation for reasons of secondary gain, to fabricate them.

…

And then the last is what we call iatrogenic….

[Defense Counsel:] And what would that be?

[Dr. Dattilio:] Literally, doctor or professional induced. And that can be deliberate, but it also can be non-deliberate by virtue of the fact that the individuals who investigate may be doing a less than adequate job in ferreting out the truth. And there can be a lot of reasons for that.

- 13 -

You know, law enforcement, they're inundated with cases. … They're busy, they don't have a lot of time, they do the best that they can, but sometimes it's harried. They do quicker interviews, and sometimes it may be induced by virtue of leading questions. And there's stopgaps that help that. There's certain structured programs that are empirically weighted, they're designed. We train child advocacy programs and investigators to use them so that they don't mislead and they protect the alleged victim, as well as the alleged perpetrator, so that it's legally and dutifully bound.

*Id.* at 14-17.

Defense counsel then asked the following question of Dr. Dattilio:

[Defense Counsel:] Now, are there generally accepted or is there a method that's preferable when interviewing children that are making these allegations so as to prevent any leading, tainted or the iatrogenic results that you're talking about?

*Id.* at 17. The Commonwealth objected to this question, and a sidebar was held, at which the Commonwealth argued as follows:

[The Commonwealth:] Judge, the basis for the objection is if there's a false report, that's actually a crime. The person's not a victim.

This specifically covers victim[s] of sexual abuse and sexual violence. This is delving into false reports and false allegations. I don't think it's covered by the statute. … [B]ecause if someone makes a false report of rape, they end up getting charged and they're a criminal, not a defendant.

[Defense Counsel:] We're not putting [the victim] in the seat of defendant.

[The Court:] But it sounds like what you're getting into is the area -- is law enforcement and investigative tactics, as opposed to behavioral characteristics of a sexual assault victim. So I'm going to sustain the objection.

*Id.* at 17-18.

- 14 -

Now, on appeal, Appellant argues that the court erred by sustaining the Commonwealth's objection to defense counsel's question, which he submits was a proper attempt to elicit Dr. Dattilio's expert testimony about "a victim's response based upon varying methods used to question that victim either by law enforcement or counselors."  Appellant's Brief at 25. Characterizing the issue before us as one of statutory interpretation, Appellant contends that section 5920 must be read as permitting the type of testimony he sought to elicit from Dr. Dattilio.  He reasons that "[a]n expert cannot opine on what a victim's response would be if the expert cannot also discuss what the victim is responding to, *i.e.* the various methods of questioning by police and counselors."  ***Id.*** at 26.  Appellant further argues that "[t]he statute specifically provides that responses 'after being assaulted' are a subject of the testimony, which would naturally include the questions to which the victim is responding.  That the expert had concluded that certain methods of questioning by police or counselors produce false information from victims is also a 'type' of response that [] Appellant had a statutory right to elicit from his expert."  ***Id.***

Preliminarily, we disagree with Appellant that, based on the record before us, we can assess the entire scope of section 5920.  The record makes clear that the trial court placed a limit on Dr. Dattilio's testimony by explicitly ruling that he could only opine about "the general behavioral characteristics of victims of sexual assault pursuant to 42 [Pa.C.S.] § 5920." N.T. Trial, 10/28/15, at 11.  Appellant at no point objected to the court's

constraint. We also point out that when the Commonwealth lodged its objection to the at-issue question, Appellant did not present any of the arguments he now raises on appeal, regarding the scope of section 5920; instead, defense counsel simply stated, "We're not putting [the victim] in the seat of defendant." *Id.* at 18. When the court ultimately sustained the Commonwealth's objection, it did so on the basis that the testimony sought to be elicited did not pertain to "behavioral characteristics of a sexual assault victim[,]" referring to the limit it had set on the scope of the doctor's testimony. *Id.* at 18. Consequently, because Appellant never argued before the trial court that section 5920 allows the testimony he sought to elicit from Dr. Dattilio, and he did not lodge any objection to the limit the court placed on the doctor's testimony, we cannot assess whether the statute, as a whole, permits the sort of testimony Appellant attempted to elicit in this case. Instead, we must limit our review to whether the trial court abused its discretion in concluding that the desired testimony would violate its ruling that the doctor's testimony must be limited to 'general behavioral characteristics of victims of sexual assault.'

In conducting this assessment, we find it pertinent that in the question to which the Commonwealth objected, defense counsel asked Dr. Dattilio to opine on the preferred *method for interviewing* a child who was only then *alleging* sexual abuse, but who had not yet been determined to *be a victim* of such abuse. Given the precise language of the at-issue question, we are not convinced that the doctor's answer to that question would have been

within the scope of the trial court's limitation on his expert testimony. In other words, we ascertain no abuse of discretion in the trial court's conclusion that the testimony sought to be elicited from Dr. Dattilio - regarding how to *interview* a child who may, *or may not*, have been sexually abused - did not constitute testimony about 'general behavioral characteristics of a sexual assault victim.' Accordingly, Appellant's sixth issue is meritless.

In Appellant's seventh and final issue, he contends that his sentences for indecent assault are illegal because those offenses should have merged, for sentencing purposes, with his convictions for EWOC. Preliminarily, our Supreme Court has stated:

> Whether Appellant's convictions merge for sentencing is a question implicating the legality of Appellant's sentence. Consequently, our standard of review is de novo and the scope of our review is plenary.
>
> ***
>
> Section 9765 provides:
>
> > § 9765. **Merger of sentences**
> >
> > No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S. § 9765.
>
> The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.

*Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009).

Here, Appellant claims that indecent assault is a lesser-included offense of EWOC. The indecent assault crime for which Appellant was specifically convicted is defined as follows:

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

***

(7) the complainant is less than 13 years of age…[.]

18 Pa.C.S. § 3126(a)(7). The offense of EWOC is defined in the Crimes Code as follows:

**(a) Offense defined.--**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S. § 4304(a)(1).

Appellant *concedes* that each of these offenses requires a different intent element. **See** Appellant's Brief at 29 ("The *mens rea* for each crime differ[s]."). More specifically, he acknowledges that "[i]ndecent [a]ssault requires an intent to arouse sexual desires, while [EWOC] requires [a] knowing violation of a duty of care." **Id.** at 29 (citing 18 Pa.C.S. § 3126 (defining indecent assault and requiring the offense be committed "for the purpose of arousing sexual desire in the person or the complainant") and

- 18 -

*Commonwealth v. Cottam*, 616 A.2d 988, 1005 (Pa. Super. 1992) (stating that the mens rea for the crime of EWOC "is a knowing violation of a duty of care")). Appellant argues, however, that "our Supreme Court's decision in [*Commonwealth v.*] *Jones*[, 912 A.2d 815 (Pa. 2006),] strongly supports merger despite this difference in the *mens rea*." Appellant's Brief at 29. According to Appellant, *Jones* establishes that in conducting a merger analysis, the court must not only consider the statutory definitions of the offenses, but it must also assess "the actual allegations involved." *Id.*

Appellant's reliance on *Jones* is unconvincing. Initially, he fails to recognize that *Jones* is a plurality opinion, with "a 'lead opinion' approach to merger and a 'dissenting opinion' approach to merger." *Commonwealth v. Williams*, 920 A.2d 887, 889 (Pa. Super. 2007). As our Supreme Court has clarified, plurality decisions have "no precedential weight…." *Baldwin*, 985 A.2d at 835. In any event, we recognize that, consistent with Appellant's argument, the lead opinion in *Jones* did adopt a "practical, hybrid approach" that requires an evaluation of "the statutory elements [of each crime], with an eye to the specific allegations leveled in the case." *Jones*, 912 A.2d at 822. However, that approach *has since been rejected* by our Supreme Court in *Baldwin*, where the Court held that "[a] plain language interpretation of Section 9765 reveals the General Assembly's intent to preclude the courts of this Commonwealth from merging sentences for two different offenses that are based on a single criminal act unless *all of the statutory elements of one of the offenses are included in the statutory elements of the other*."

***Baldwin***, 985 A.2d at 837 (footnote omitted). Because in this case, Appellant acknowledges that the statutory definition of indecent assault has at least one element that is not included in the definition of EWOC - *i.e.*, an intent to arouse sexual desire - his reliance on ***Jones*** does not demonstrate that those two crimes should have merged for sentencing purposes.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2017