Harold CURTIS, and Nancy Curtis, Plaintiffs,

v.

Captain Patrick McHENRY, et al., Defendants.

Civil Action No. 95–270 Erie.

United States District Court, W.D. Pennsylvania.

Feb. 21, 1997.

---

J. Gregory Moore, Yochim, Skiba, Moore & Nash, Erie, PA, Craig Parshall, Fredericksburg, VA, for plaintiffs.

Donna J. McClelland, Kemal Mericli, Office of Atty. Gen., Pittsburgh, PA, for defendants.

## MEMORANDUM OPINION AND ORDER

McLAUGHLIN, District Judge.

This is a section 1983 claim against members of the Pennsylvania State Police. Presently pending before this Court is Plaintiffs' motion to compel production of police reports which the Defendants claim are privileged under the Pennsylvania Criminal History Records Information Act (PCHRIA), 18 Pa. C.S.A. §§ 9101 *et seq.* We find no authority for recognizing the claimed privilege under Federal Rule of Evidence 501 and grant Plaintiffs' motion.

### I.

Plaintiffs are proceeding on the state created danger theory. Plaintiffs claim, in short, that members of the Pennsylvania State Police purposefully turned a blind eye to their complaints of harassment by their neighbors and announced a "hands off" policy which intensified the harassment.

In an attempt to ferret out evidence concerning the Defendants' knowledge of the dispute, Plaintiffs requested production of any documents, including police reports, relating to the dispute. Plaintiffs also requested the disciplinary files of the Defendant officers. Defendants identified a number of police reports falling within the scope of the request, but produced only the those reports relating to complaints against the Plaintiffs. Defendants refused to produce any incident reports relating to complaints against the Plaintiffs' neighbors, asserting that the reports are privileged under the PCHRIA, 18 Pa.C.S.A. § 9106(c)(4) (Supp.1996). Defendants also refused to produce the officers' disciplinary files, asserting that they were irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

### II.

#### A. The Police Reports

■ The PCHRIA, *inter alia,* creates a mechanism by which citizens may gain access to certain law enforcement records. 18 Pa. C.S.A. § 9121(b). The act permits citizens to obtain their own criminal history information. 37 Pa.Code § 195.4. By implication, individuals making requests pursuant to the statute are not permitted to obtain information concerning third parties. Id. Additionally, the act prohibits the "dissemination" of documents containing "investigative information" to anyone who is not a "criminal justice agency." 18 Pa.C.S.A. § 9106(c)(4) (Supp. 1996).

Defendants argue that the PCHRIA creates a blanket prohibition against disclosure of police reports that concern third parties or contain investigative information; and that this prohibition creates a privilege against civil discovery. Additionally, Defendants claim that federal courts are obligated to recognize this privilege, even in federal question cases, under the Supreme Court's recent decision in *Jaffee v. Redmond,* —— U.S. ——, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). We doubt the validity of both of these contentions, but, for purposes of this opinion, will assume that the PCHRIA creates the claimed privilege so that we may base our decision exclusively on federal law.[1]

Contrary to Defendants' contention, even assuming that the PCHRIA created the claimed privilege, it would not automatically apply in a federal question case in federal court. Evidentiary privileges in federal court are analyzed under Federal Rule of Evidence 501. In diversity cases, federal

1. Defendants have not cited us to any cases supporting their reading of the PCHRIA and FED. R.EVID. 501. Our research, however, reveals two unpublished decisions from the Eastern District of Pennsylvania taking such a position. *See Brooks–Bey v. Reid,* 1992 WL 22234 (E.D.Pa. Feb.4, 1992); *McCrery v. Mark,* 1992 WL 208980 (E.D.Pa. Aug.19, 1992). For the reasons set forth below, we decline to follow them.

courts apply the privileges created by applicable state law. FED.R.EVID. 501. In federal question cases, however, evidentiary privileges are "governed by the principles of common law as they may be interpreted by the courts of the United States in light of reason and experience." *Id.* Obviously, this is a federal question case.

The Supreme Court recently addressed the extent to which federal courts should recognize state created privileges in federal question cases in *Redmond.* Defendants contend that *Redmond* stands for the proposition that the existence of a state created statutory privilege is "dispositive" on the issue of whether a such a privilege should be recognized by federal courts in a federal question case. We do not read *Redmond* to stand for this proposition. *Redmond* simply applied the analysis set forth under FED. R.EVID. 501.

*Redmond* involved ·a section 1983 action against police officers for excessive force arising out of a police shooting. *Redmond,* —— U.S. at ——, 116 S.Ct. at 1925. After the incident, the shooting officer participated in counselling sessions with a licensed social worker. *Id.* at ——, 116 S.Ct. at 1926. Plaintiffs sought discovery of the social worker's notes. *Id.* The officer invoked Illinois' statutory patient-psychotherapist privilege, which specifically applied to conversations with social workers. *Id.* In deciding whether to recognize the claimed privilege as a matter of federal law under FED.R.EVID. 501, the Supreme Court looked to the law of the fifty states. *Id.* at ——–——, 116 S.Ct. at 1929–30. The Supreme Court observed that the "psychotherapist privilege" had been codified, in some form, by all fifty states. *Redmond,* —— U.S. at ——, 116 S.Ct. at 1929. All Justices agreed that a federal psychotherapist privilege should apply to conversations with licensed psychiatrists and psycho-

therapists. *Id.* at ——, 116 S.Ct. at 1931. A majority of the Justice also reasoned that the privilege should extend to conversations with a licensed social worker because "the reasons for recognizing a privilege for treatment by psychiatrists and psychologists apply with equal force to treatment by a clinical social worker ..." *Id.* at ——, 116 S.Ct. at 1931.

Thus, under *Redmond,* we are not compelled to recognize a blanket privilege against discovery of police reports containing investigative information or complaints against third persons simply because the Pennsylvania legislature may have enacted one. We are, however, required to determine if a similar privilege has been created by enough states so that it can fairly be characterized as a "principle of common law" "in the light of reason and experience." Both legal research and "reason and experience" [2] compel us to conclude that it is not.

In the spirit of this analysis, we have reviewed the lengthy list of statutes from other states which Defendants claim demonstrate a consensus among the states in favor of creating such a privilege.[3] However, none of these statutes expressly create the claimed privilege and Defendants have not cited to any cases interpreting those statutes as creating such a privilege. Our research has also revealed none.

Stated otherwise, there is no authority among the principles of common law for a blanket privilege against the discovery of police reports simply because they contain investigative information or relate to complaints against third parties. The type of "uniform judgment" that existed in *Redmond* simply does not exist here. *Redmond,* —— U.S. at ——–——, 116 S.Ct at 1930–31. The claimed privilege, therefore, is not entitled to recognition in a federal question case under FED.R.EVID. 501.

---

2. Reason leads us to point out that, if state statutory privileges were automatically entitled to recognition under FED.R.EVID. 501, a state could completely frustrate the ability to prove § 1983 claims against state law enforcement officers by simply passing a statute that privileged all information relating to any law enforcement activity.

3. See ALASKA STAT § 09.25.120; ARIZ REV.STAT. § 32-2455; ARK.CODE ANN. § 12-12-1011; CAL.

GOV'T.CODE § 6254; COLO REV.STAT ANN § 24-72-305; DEL CODE ANN. tit. 29, § 1002; FLA STAT. ANN. 119.07; KAN. STAT. ANN. § 45.221; KY REV.STAT. ANN. § 17.150; LA.REV.STAT ANN § 44.3; MINN. STAT. ANN. § 13.82; N.J. STAT. ANN. § 2A:84A–28 and 47:1A–2; N.Y. C.P.L.R. LAW §§ 240.20 and 3101; N.C. GEN.STAT § 15A–904–06; OHIO REV. CODE ANN. § 149.43. OKLA. STAT ANN. tit. 74, 150.4; TEX. GOV'T.CODE ANN. § 552.108.

We note that a qualified privilege has been recognized for police reports as an extension of the "executive" or "governmental" privilege where it would tend to reveal the identity of an informer. *United States v. O'Neill,* 619 F.2d 222, 229 (3d Cir.1980). Some district courts have also understood the "governmental" privilege to impose a balancing test for the discovery of law enforcement records in section 1983 actions. See, e.g., *Pack v. Beyer,* 157 F.R.D. 226, 232 (D.N.J. 1994); *Siegfried v. City of Easton,* 146 F.R.D. 98, 101 (E.D.Pa.1992); *G–69 v. Degnan,* 130 F.R.D. 326, 332 (D.N.J.1990); *Clark v. Township of Falls,* 124 F.R.D. 91, 93 (E.D.Pa.1988) vacated on *other grounds,* 890 F.2d 611 (3d Cir.1989). However, a "governmental" privilege is not being claimed here. We will compel production of the police reports in question.

*B.  The Disciplinary Files*

█  Defendants have objected to the production of the disciplinary files under FED. R.CIV.P. 26(b)(1) on the grounds that they are irrelevant and not reasonably calculated to lead to the discovery of any admissible evidence. We disagree. The theory of this case is "state created danger" based on allegedly turning a blind eye to reports of harassment. Plaintiffs claim that Defendant Patrick McHenry (McHenry), who is the supervisor of the officers who allegedly ignored Plaintiffs' complaints, is responsible for a "hands off" policy. The disciplinary files of his subordinates may contain material reasonably calculated to lead to information concerning whether such a policy existed and whether McHenry is responsible for it. However, given the potentially sensitive nature of these files, we will order Defendants to produce the disciplinary files for *in camera* inspection. The Court will then rule on whether they may be discovered.

### III.

An appropriate order follows.

### ORDER

AND NOW, this 21st day of February, 1997, IT IS HEREBY ORDERED that Plaintiffs' motion to compel is GRANTED; and

1.  Defendants are ORDERED to produce the police reports requested in Plaintiffs' First Demand for Documents on or before March 3, 1997; and

2.  Defendants are ORDERED to produce, under seal, the disciplinary files requested in Plaintiffs' First Demand for Documents for *in camera* inspection by this Court on or before March 3, 1997; and

3.  The following amendments are made to this Court's Case Management Order:

a.  The parties shall complete discovery on or before April 18, 1997; and

b.  Any party may file a dispositive motion on or before May 8, 1997; responses to such motions shall be filed on or before May 28, 1997; and

c.  Plaintiffs' pretrial narrative shall be filed on or before June 9, 1997; Defendants' pretrial narrative statement shall be filed on or before June 19, 1997.