J-A31022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: SUBPOENAS IN CASE OF | : | IN THE SUPERIOR COURT OF |
| MIELCARZ V. PIETZSCH, ET AL., | : | PENNSYLVANIA |
| CIVIL CASE NO. 160700066 SERVED | : | |
| BY TOYOTA MOTOR CORPORATION | : | |
| ON BUCKS COUNTY DISTRICT | : | |
| ATTORNEY'S OFFICE REQUESTING | : | |
| DISCLOSURE OF PROTECTED | : | |
| CRIMINAL INVESTIGATIVE | : | |
| RECORDS | : | No. 119 EDA 2017 |
| | : | |
| APPEAL OF: COMMONWEALTH OF | : | |
| PENNSYLVANIA, BUCKS COUNTY | : | |
| DISTRICT ATTORNEY'S OFFICE | : | |

Appeal from the Order Entered December 15, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  July Term, 2016   160700066

| | | |
|---|---|---|
| IN RE: SUBPOENAS IN CASE OF | : | IN THE SUPERIOR COURT OF |
| MIELCARZ V. PIETZSCH, ET AL., | : | PENNSYLVANIA |
| CIVIL CASE NO. 160700066 SERVED | : | |
| BY JULIA MIELCARZ ON BUCKS | : | |
| COUNTY DISTRICT ATTORNEY'S | : | |
| OFFICE REQUESTING DISCLOSURE | : | |
| OF PROTECTED CRIMINAL | : | |
| INVESTIGATIVE RECORDS | : | |
| | : | No. 122 EDA 2017 |
| APPEAL OF: COMMONWEALTH OF | : | |
| PENNSYLVANIA, BUCKS COUNTY | : | |
| DISTRICT ATTORNEY'S OFFICE | : | |

Appeal from the Order Entered December 15, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  July Term, 2016   160700066

BEFORE:   PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 22, 2018**

*Former Justice specially assigned to the Superior Court

In this case, the Bucks County District Attorney's Office ("DA's Office") appeals from the Court of Common Pleas of Philadelphia County's ("trial court's") order dated December 12, 2016 and entered on December 15, 2016. The order denied DA's Office's motion to quash a subpoena issued in a civil case by Toyota Motor Corporation ("Toyota"), which appeal was docketed at 119 EDA 2017. The order also denied DA's Office's motion to quash an almost identical subpoena issued in the same case by Julia Mielcarz ("Mielcarz" and together with Toyota "Issuers"), which appeal was docketed at 122 EDA 2017. DA's Office alleges that the trial court erred in compelling disclosure of certain materials to litigants in a civil case. In both appeals, DA's Office's claims center on its contention that the trial court's order violated the Criminal History Records Information Act ("CHRIA"), 18 Pa.C.S.A. § 9101 *et seq.*, which precludes disclosure of criminal investigative information.

Preliminarily, we conclude that the order denying the motions to quash is a collateral order and, therefore, we have jurisdiction over these appeals. As to the merits, we conclude that CHRIA bars disclosure only if the records were created for the purpose of a criminal investigation. Some of the records sought in this case are protected by CHRIA; however, further development of the record is required to determine if other records are protected by CHRIA. Accordingly, we reverse in part, vacate in part, and remand for further proceedings consistent with this memorandum.

- 2 -

The factual background of this case is as follows. On December 10, 2014, Jamie Pietzsch ("Pietzsch") rear-ended a vehicle driven by Mielcarz. On November 16, 2015, Pietzsch pled guilty to three counts of driving under the influence – controlled substance,[1] two counts of aggravated assault by vehicle while driving under the influence,[2] two counts of recklessly endangering another person,[3] driving under the influence of alcohol – general impairment,[4] driving under the influence of alcohol – highest rate,[5] reckless driving,[6] and speeding[7] in relation to that accident. She was subsequently sentenced to a term of imprisonment. **See Commonwealth v. Pietzsch**, CP-09-CR-0005239-2015 (C.C.P. Bucks).

On July 5, 2016, Mielcarz instituted this civil action seeking to recover for injuries sustained during the accident. Mielcarz' complaint named several defendants including, *inter alia*, Pietzsch and Toyota. In November and December 2016, Issuers served DA's Office with separate subpoenas seeking

---

[1] 75 Pa.C.S.A. § 3802(d)(1)(iii), (d)(2), and (d)(3).

[2] 75 Pa.C.S.A. § 3735.1(a).

[3] 18 Pa.C.S.A. § 2705.

[4] 75 Pa.C.S.A. § 3802(a)(1).

[5] 75 Pa.C.S.A. § 3802(c).

[6] 75 Pa.C.S.A. § 3736(a).

[7] 75 Pa.C.S.A. § 3361.

its complete investigative file relating to the accident. DA's Office filed motions to quash the subpoenas. On December 15, 2016, the trial court entered its order denying the motions to quash and directing DA's Office to comply with the subpoenas. These appeals followed.[8]

DA's Office presents two issues for our review:

1. [Does this Court have jurisdiction over these appeals under the collateral order doctrine?

2. Did the trial court err in denying DA Office's motions to quash the subpoenas?]

DA's Office's Brief at 4.

In its first issue, DA's Office argues that this Court has jurisdiction to hear these appeals under the collateral order doctrine. "The question of whether an order is appealable [] is a question of law. Accordingly, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. McClure***, 172 A.3d 668, 683 (Pa. Super. 2017) (citation omitted).

---

[8] DA's Office and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925(a). Although DA's Office did not include its first issue in its concise statement, this Court issued rules to show cause directing DA's Office to explain why these appeals should not be quashed as interlocutory. DA's Office filed responses arguing that the order is subject to review under the collateral order doctrine. ***Cf. Kelley v. Pittman***, 150 A.3d 59, 64 (Pa. Super. 2016) (citation omitted) (discovery orders are only appealable if they are collateral orders). In mid-February 2017, this Court discharged the rules to show cause and indicated that the parties should be prepared to address jurisdictional concerns in their briefs and at oral argument. ***Cf. Grimm v. Grimm***, 149 A.3d 77, 83-84 (Pa. Super. 2016) (citation omitted) (explaining that a party may not waive arguments relating to subject-matter jurisdiction).

Generally, appeals may only be taken from final orders. Pa.R.A.P. 341(a). One exception to this rule, however, is that a party has a right to appeal a collateral order. Pa.R.A.P. 313(a). Rule 313 defines a collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

DA's Office argues that the order in question is a collateral order because it requires the disclosure of privileged and/or confidential information. According to DA's Office, without the ability to appeal the trial court's order it will be required to violate CHRIA's provisions and turn over privileged and/or confidential information to Issuers. After careful consideration, we conclude that the order denying DA's Office's motions to quash satisfies all three requirements of Rule 313(b).

First, the order is separate and collateral to the main cause of action. The order does not involve the merits of the case. Issuers, opposing parties in the case, are the two appellees before this Court. Our decision on whether DA's Office must comply with the subpoenas will not touch on which, if any, defendants are liable for Mielcarz' injuries nor the amount of damages (if any) to which she may be entitled. Second, DA's Office argues that the information

sought by Issuers is confidential and/or privileged under CHRIA.[9]  Protecting confidential and/or privileged information is a right too important to be denied review.  *Jones v. Faust*, 852 A.2d 1201, 1203 (Pa. Super. 2004) (citation omitted).  This Court and our Supreme Court have applied this rule in an array of contexts.  *E.g., Commonwealth v. Harris*, 32 A.3d 243, 249-251 (Pa. 2011) (order concerning psychotherapist-patient privilege is a collateral order); *Price v. Simakas Co., Inc.*, 133 A.3d 751, 755 (Pa. Super. 2016) (order requiring disclosure of information made confidential by federal regulation is a collateral order).  This case similarly requires production of documents protected by a privilege and/or made confidential by state statute.  Finally, if review is postponed until final judgment in the case, the claim will be irreparably lost because DA's Office "would be forced to disclose information in conformance with the trial court's discovery order[].  Such disclosure could not be undone in a subsequent appeal." *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1058 (Pa. Super. 2008).  Therefore, all three requirements of the collateral order doctrine are satisfied and we have jurisdiction to reach the merits of these appeals.

DA's Office argues that CHRIA bars it from producing its investigative file.  Thus, in order to resolve these appeals we must interpret CHRIA.  Issues

---

[9] We explicitly decline to opine on whether CHRIA's nondisclosure requirement is a privilege or whether it merely ensures confidentiality of information.  It is sufficient for our analysis to determine that CHRIA's nondisclosure requirement is a privilege and/or ensures confidentiality of information.

of statutory construction are pure questions of law. Therefore, our standard of review is *de novo* and our scope of review is plenary. ***See In re Steele***, 177 A.3d 328, 333 (Pa. Super. 2017) (citation omitted).

We are guided by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq*. ***See Rancosky v. Washington Nat'l Ins. Co.***, 170 A.3d 364, 371 (Pa. 2017). "[O]ur paramount interpretative task is to give effect to the intent of our General Assembly in enacting" CHRIA. ***Commonwealth v. Grove***, 170 A.3d 1127, 1141 (Pa. Super. 2017) (citation omitted). "Generally, a statute's plain language provides the best indication of legislative intent. . . . Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning." ***Commonwealth v. Wise***, 171 A.3d 784, 788 (Pa. Super. 2017) (cleaned up).[10] "In reading the plain language, words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" ***Gross v. Nova Chemicals Servs., Inc.***, 161 A.3d 257, 264 (Pa. Super. 2017) (cleaned up).

The Commonwealth Court has explained that "CHRIA's general purpose is to control the collection, maintenance, dissemination[,] or receipt of criminal history record information."[11] ***Garner v. Bureau of Prof'l & Occupational***

---

[10] "'Cleaned up' is a new parenthetical designed to tell readers that they have removed extraneous material for readability and guarantee that nothing removed was important." ***Commonwealth v. Kehr***, 2018 WL 1077109, \*5 n.6 (Pa. Super. Feb. 28, 2018) (cleaned up).

[11] CHRIA defines "criminal history record information" as

*Affairs, State Bd. of Optometry*, 97 A.3d 437, 442 (Pa. Cmwlth. 2014),

*citing* 18 Pa.C.S.A. § 9103, *appeal denied*, 112 A.3d 655 (Pa. 2015); *see also*

***Neal v. Pennsylvania State Police***, 2013 WL 3944421, *2 n.7 (Pa. Cmwlth.

Mar. 5, 2013) (unpublished memorandum) ("the purpose of [CHRIA] is to

ensure the accuracy of an individual's criminal history record information[.]").

Having set forth CHRIA's general purpose, we turn to the specific

provision at issue in this case. CHRIA provides that:

> Investigative and treatment information shall not be disseminated to any department, agency[,] or individual unless the department, agency[,] or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print[,] or other identifying characteristic.

18 Pa.C.S.A. § 9106(c)(4). "Investigative information" is defined as

"[i]nformation assembled as a result of the performance of any inquiry, formal

or informal, into a criminal incident or an allegation of criminal wrongdoing

---

> Information collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges[,] and any dispositions arising therefrom. The term does not include intelligence information, investigative information[,] or treatment information, including medical and psychological information, or information and records specified in section 9104 (relating to scope).

18 Pa.C.S.A. § 9102.

and may include modus operandi information." 18 Pa.C.S.A. § 9102.[12] DA's Office argues that its investigative file constitutes investigative information and, therefore, CHRIA proscribes production. Issuers, on the other hand, argue that the information they seek is not investigative information and, therefore, it is subject to subpoena. *Cf.* Pa.R.C.P. 4003.1(a) ("a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action").

Our Supreme Court recently interpreted CHRIA's investigative information provision in *Pennsylvania State Police v. Grove*, 161 A.3d 877 (Pa. 2017).[13] In *Grove*, an individual requested dashcam videos from the Pennsylvania State Police. The Pennsylvania State Police denied the request and argued that disclosing dashcam video recordings violated CHRIA. Our Supreme Court disagreed in part. It noted that dashcam videos "are created when a light or siren is activated, and capture many events, including routine traffic stops, patrol vehicle travel[,] and any other event a state trooper deems appropriate to record." *Id.* at 895 (citation omitted). Thus, dashcam videos

---

[12] There is no allegation in this case that the records sought by Issuers is treatment information.

[13] The parties before us cite numerous Commonwealth Court cases decided prior to *Grove* in support of their arguments that the entire investigative file was or was not protected by CHRIA. While the guidance included in those cases is helpful to our resolution of the issues before us, we rely foremost on our Supreme Court's decision in *Grove* to define the scope of CHRIA, as we are duty-bound to effectuate that decision. *See Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 480 (Pa. 2011) (citations omitted).

"are created in many instances that plainly do not involve criminal activity, and may ultimately be used in civil proceedings, administrative enforcement[,] and disciplinary actions." *Id.* (citation omitted). Our Supreme Court therefore held that "the question of whether information captured on a particular [dashcam video] is to be excluded from public access under CHRIA must be determined on a case-by case basis." *Id.* (footnote omitted). Ultimately, our Supreme Court determined that the video portions of the dashcam videos were not investigative information protected by CHRIA; however, the audio portions of the dashcam videos were investigative information protected by CHRIA because they contained recordings of witness interviews. *See id.*[14]

Under *Grove*, the term "investigative information" in CHRIA encompasses only information that is created for the purpose of investigating suspected criminal activity. Otherwise, disclosure of dashcam video of routine traffic stops or police traveling down the road with lights and sirens activated would be barred under CHRIA. Our Supreme Court emphasized that disclosing

---

[14] Toyota correctly notes that no party addressed the audio portion of the dashcam videos before our Supreme Court. *See* Toyota's Brief at 16 n.12. Our Supreme Court, however, explicitly held that the Commonwealth Court "correctly determined the only potential investigative information on these [dashcam videos] is contained in the audio portion." *Grove*, 161 A.3d at 896 (cleaned up). Hence, even if the parties did not raise the issue, the opinion of our Supreme Court addressed it. The basis for the court's refusal to compel or permit disclosure was that witness interviews, *i.e.*, information gathered as a result of an investigation into criminal activity, were included in the audio recording. *See id.*

certain information, such as the dashcam video at issue in **Grove**, collected by police for use in possible civil, administrative, or other adjudicatory proceedings is not barred by CHRIA. In other words, non-investigative information is discoverable under Rule 4003.1 of the Rules of Civil Procedure.

The plain language of the statute supports this reading. CHRIA limits the scope of the term "investigative information" to those materials gathered "as a result" of an investigation "into a **criminal** incident or an allegation of **criminal** wrongdoing[.]" 18 Pa.C.S.A. § 9102 (emphasis added). The plain language of CHRIA does not bar disclosure of information gathered during a **noncriminal** investigation. Moreover, CHRIA permits disclosure of criminal history record information to any individual or non-criminal justice agency upon request (not just subpoena). **See** 18 Pa.C.S.A. § 9121(b). That information is generally comprised of publicly available information, such as a charging document or an arrest record. Hence, our General Assembly enacted a statutory scheme that permits dissemination of information that is generally available to the public upon request, permits disclosure of non-investigative information not generally available to the public when subpoenaed, and categorically bars disclosure of investigative information (except to criminal justice agencies in limited circumstances).[15]

---

[15] This statutory scheme comports with the realities of law enforcement in the twenty-first century. Police often conduct noncriminal investigations. **See Commonwealth v. Gary**, 91 A.3d 102, 127 (Pa. 2014) (McCaffery, J., opinion announcing the judgment of the court), *quoting **Cady v.***

Toyota argues that in order for information to be protected by CHRIA, the district attorney "must actively direct the police investigation." Toyota's Brief at 14. This argument conflicts with our Supreme Court's holding in *Grove* that certain information that was gathered by police, not at the active direction of the district attorney, was protected by CHRIA. *See Grove*, 161 A.3d at 895-896. Moreover, nothing in the plain language of CHRIA supports Toyota's assertion that the district attorney must direct investigative actions to draw information within the protective scope of CHRIA.

We also reject Toyota's argument that past practice indicates that most governmental agencies in the Commonwealth have complied with similar subpoenas. *See* Toyota's Brief at 19. Erroneous interpretation of CHRIA is not binding (or even persuasive) with respect to our straightforward application of *Grove* and the plain language of the statute. Instead, it merely reflects the reality that governmental agencies may be unwilling or unable to allocate the resources and effort expended by DA's Office in this case.

---

*Dombrowski*, 413 U.S. 433, 441-442 (1973) ("local and state police officers have 'extensive, and often noncriminal contact with automobiles' due to the extensive regulation of motor vehicles, the frequency with which they can become disabled or involved in an accident on public roads, and the need for officers to investigate automobile accidents"). Hence, not all police interactions with automobile occupants are a result of investigation into criminal activity. Our Supreme Court recognized this fact in *Grove* by enumerating a list of circumstances a police officer may interact with a motorist which are not a result of an investigation into possible criminal activity, *e.g.*, routine traffic stops.

Mielcarz also advances a constitutional argument in support of her interpretation of CHRIA. She contends that if we adopt DA's Office's interpretation of CHRIA, it would result in violations of **Brady v. Maryland**, 373 U.S. 83 (1963). Mielcarz' Brief at 5. This argument ignores the Supremacy Clause of the United States Constitution. Pursuant to the Supremacy Clause, criminal justice agencies must turn over any information favorable to a criminal defendant even if protected by CHRIA. **See Pennsylvania v. Ritchie**, 480 U.S. 39, 58 (1987) (explaining that under Supremacy Clause police and prosecutors must comply with **Brady** even when doing so violates a state statute).

Mielcarz attempts to argue that public policy also requires that we adopt her interpretation of CHRIA. **See** Mielcarz' Brief at 20-21. Again, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). In this case, the words of CHRIA are clear and free of ambiguity. Thus, we may not rely on public policy arguments to override our General Assembly's intent as evidenced by this unambiguous language. Accordingly, we conclude that a criminal justice agency must produce materials when

subpoenaed if those materials were not gathered as a result of an investigation into criminal activity or wrongdoing.[16]

We also find support for our interpretation of CHRIA through comparison with the Right-to-Know Law ("RTKL"). Both CHRIA and RTKL deal with disclosure of information by government agencies. Pursuant to the Statutory Construction Act, "we construe statutes dealing with the same subject matter as *in pari materia*[.]" **Commonwealth v. Anderson**, 169 A.3d 1092, 1102 (Pa. Super. 2017), *citing* 1 Pa.C.S.A. § 1932. Thus, the two statute must be read *in pari materia*.

RTKL does not grant public access to "record[s] of an agency relating to a noncriminal investigation[.]" 65 P.S. § 97.708(b)(17). It similarly does not grant public access to "record[s] of an agency relating to or resulting in a criminal investigation[.]" 65 P.S. § 97.708(b)(16). Hence, in RTKL, our General Assembly explicitly addressed both criminal investigative information and noncriminal investigative information. In CHRIA, however, our General Assembly precluded dissemination only of information pertaining to criminal investigations. By comparing these related statutes, we can infer by this omission that our General Assembly meant only to protect criminal investigative information under CHRIA. With CHRIA, our General Assembly

---

[16] As we conclude that the plain language of CHRIA is clear and unambiguous, we need not reach the parties' additional arguments about other tools of statutory interpretation.

made a policy choice to permit disclosure of noncriminal investigative information by criminal justice agencies when served with a lawful subpoena under the Federal Rules of Civil Procedure[17] or Pennsylvania Rules of Civil Procedure. *See Commonwealth v. Kauffman*, 605 A.2d 1243, 1246 (Pa. Super. 1992) (government is required to turn over subpoenaed documents in state court civil action even if disclosure is not required by RTKL). Accordingly, a comparison of CHRIA to RTKL supports the conclusion that noncriminal investigative information is not protected by CHRIA.

Having set forth the proper scope of CHRIA's prohibition on releasing investigative information, we turn to the specific facts of this case. Issuers' subpoenas sought DA's Office's investigative file, which they contend contains measurements and photographs of the accident scene, blood alcohol test results, and other information.[18] Some of this information is protected by

---

[17] We note that most district courts in the Third Circuit have held that CHRIA does not apply in cases pending in federal court involving at least one federal claim. *E.g. D.N. ex rel. Nelson v. Snyder*, 2009 WL 1874032, *1 (M.D. Pa. June 26, 2009), *citing* *Curtis v. McHenry*, 172 F.R.D. 162, 164 (W.D. Pa. 1997). These courts have held that CHRIA only applies in federal court cases when the court's jurisdiction is based solely on diversity of citizenship.

[18] At oral argument, Issuers averred that the police in this case handed over the materials related to their investigation to DA's Office and, therefore, Issuers could not serve a subpoena on the police seeking that information. We note that it is immaterial whether the police or DA's Office possess the information for purposes of CHRIA's investigative information provision. CHRIA has a specific section addressing criminal agencies working together on a case. That section provides that:

CHRIA as it was gathered as a result of an investigation into Pietzsch's motor vehicle offenses. Specifically, blood alcohol tests are not conducted during routine police action. Instead, they are only performed if there is reason to believe that a driver was operating a motor vehicle under the influence of alcohol and/or drugs. In other words, blood test results are the consequence of investigation into criminal activity. Hence, we conclude that the trial court erred in denying DA's Office's motions to quash with respect to the portions of the subpoenas seeking blood test results.

As to the remaining materials in the investigative file, we conclude that the record is insufficient to determine whether they constitute investigative information as defined by CHRIA. For example, the record is unclear regarding whether police took measurements and photographs as a result of an

> A criminal justice agency which possesses information protected by this section, but which is not the source of the information, shall not disseminate or disclose the information to another criminal justice agency but shall refer the requesting agency to the agency which was the source of the information. **This prohibition shall not apply if the agency receiving the information is investigating or prosecuting a criminal incident in conjunction with the agency possessing the information. Agencies receiving information protected by this section assume the same level of responsibility for the security of such information as the agency which was the source of the information.**

18 Pa.C.S.A. § 9106(d) (emphasis added). Moreover, as evidenced by *Grove*, police files may contain both investigative information and non-investigative information. Thus, in this case, DA's Office must disclose the information in its possession as long as disclosure does not violate CHRIA.

investigation into possible criminal activity or whether those measurements and photographs were taken as part of a typical accident investigation.[19]  If taken during the course of an investigation into possible criminal activity, CHRIA bars their disclosure.  If they were taken during a routine investigation into an automobile accident, CHRIA does not prohibit their disclosure.[20]

For purposes of the trial court's inquiry, it is immaterial whether "the prosecution of [Pietzsch] is wholly dependent" on the investigative file.  DA's Brief at 30.  It is similarly irrelevant whether the materials "are absolutely critical to [Mielcarz] being able to prosecute the claims brought in the underlying lawsuit," Mielcarz' Brief at 5, or if the "criminal case is closed[.]"  *Id.* at 17.  CHRIA neither prohibits nor permits disclosure of information on those bases.  Instead, as noted above, CHRIA protects information based on the circumstances under which it was gathered.  Information obtained as a result of an investigation into criminal activity is protected.  Information

_____

[19] *Grove* shows that DA's Office's averment that these measurements and photographs were "unquestionably" taken as a result of an investigation into possible criminal activity, DA's Office's Brief at 21, is incorrect.  DA's Office's interpretation would mean that CHRIA prohibits disclosing dashcam videos of traffic stops.  *Grove*, however, specifically held that such dashcam videos are not protected by CHRIA.  *Grove*, 161 A.3d at 895.

[20] DA's Office argues that remand is inappropriate because Issuers failed to meet their burden to prove the documents were not protected under CHRIA.  In *Grove*, however, our Supreme Court held that the agency asserting that disclosure would violate CHRIA bears the burden of proof.  *Grove*, 161 A.3d at 895 n.19.  Remand is appropriate so that the trial court can make the necessary factual determinations.

gathered as a result of a different inquiry or for a different reason is not protected.

The trial court must undertake this analysis for the remaining materials in the investigative file. In other words, after receiving the full investigative file from DA's Office, the trial court must determine whether those materials were created during the course of an investigation into possible criminal activity. Although the trial court may review the relevant materials *in camera*, it must provide Issuers an opportunity to challenge evidence that DA's Office offers to satisfy its burden of proof. For example, if DA's Office offers an affidavit from a police officer regarding the normal process of investigating an automobile accident, Issuers may seek to depose that police officer and/or offer an affidavit from a different police officer.[21] Hence, although the review of the investigative file may be *in camera*, the proceedings may not be conducted *ex parte*. We leave it to the sound discretion of the trial court to fashion an appropriate mechanism by which to conduct this review.

We emphasize that even if the trial court finds that police suspected Pietzsch was driving under the influence of alcohol at the time they took the

---

[21] DA's Office argues that this practice is "unsound." DA's Office's Brief at 35. In **Grove**, our Supreme Court explicitly relied on affidavits from the Pennsylvania State Police when determining if information were protected under CHRIA. **See Grove**, 161 A.3d at 895 (citing an affidavit discussing the general practices of the Pennsylvania State Police's regarding dashcam videos). Therefore, the idea is not unsound. Instead, it is endorsed by our Supreme Court.

measurements and photographs, that is not dispositive of whether the measurements and photographs were taken during the course of an investigation into possible criminal activity. Instead, the trial court must determine whether the measurements and photographs were taken in order to further such an investigation or whether police routinely take such measurements and photographs while investigating accidents and did so because of that routine practice.

In sum, we conclude that CHRIA only bars disclosure of those portions of an investigative file gathered or created during the course of an investigation into criminal wrongdoing. Applying this rule to the facts of this case, we conclude that CHRIA bars disclosure of the blood test results. We further conclude that remand is necessary to determine if CHRIA bars disclosure of the remaining portions of the investigative file. Accordingly, we reverse in part, vacate in part, and remand for further proceedings consistent with this memorandum.

Order reversed in part and vacated in part. Case remanded. Jurisdiction relinquished.

P.J.E. Stevens concurs in the result of the memorandum.

Judge Panella files a dissenting statement.

- 19 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/18